UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **America First Legal Foundation**<br>300 Independence Avenue SE,<br>Washington, DC 20003;<br><br>**Fight for Schools and Families**,<br>P.O. Box 523452<br>Springfield, VA 22152; and<br><br>**Parents Defending Education**<br>4532 Lee Hwy #119<br>Arlington, VA 22207;<br><br>*Plaintiffs*,<br><br>v.<br><br>**Miguel Cardona**, in his official capacity as<br>United States Secretary of Education<br>400 Maryland Avenue SW,<br>Washington, DC 20202;<br><br>**United States Department of Education**,<br>an agency of the United States<br>Eisenhower Executive Office Building<br>400 Maryland Avenue SW,<br>Washington, DC 20202; and<br><br>**National Parents and Families<br>Engagement Council**, an advisory<br>committee established and utilized by<br>Secretary of Education Miguel Cardona<br>Eisenhower Executive Office Building<br>400 Maryland Avenue SW,<br>Washington, DC 20202,<br><br>*Defendants*. | Case No. 1:22-cv-1947 |

**COMPLAINT**
(For Injunctive and Declaratory Relief)

STATEMENT OF THE CASE

1.      On June 14, 2022, the Department of Education ("Department") launched the National Parents and Families Engagement Council. The Department created the Council to "facilitate strong and effective relationships between schools and parents, families and caregivers." In that Press Release, the Department announced that "[t]he Council will meet" "[i]n the coming weeks" to discuss "how . . . children are recovering [from the COVID-19 pandemic]; the different ways schools are providing academic, mental health and social and emotional support; and how they can best constructively engage with schools."

2.      In a later Press Release, the Department reiterated the goals of the Council and said that "[t]he Council *meets* to discuss" various issues. (emphasis added). Details about the Council and its meetings are unavailable in the Federal Register or elsewhere.

3.      Plaintiffs Fight for Schools and Families and Parents Defending Education are "'directly affected, interested, and qualified' with respect to the [Council's] function of improving [education]," yet they are not represented on the Council, either directly or indirectly. *NAACP Legal Def. & Educ. Fund. Inc. v. Barr*, 496 F. Supp. 3d 116, 144–45 (D.D.C. 2020) (quoting 41 C.F.R. § 102-3.60(b)(3)) (issuing an injunction that required the Attorney General to ensure that his advisory committee had a fairly balanced membership).

4.      The Defendants have violated the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 §§ 1-16. The Plaintiffs seek declaratory and injunctive in four broad respects.

5.      First, the Defendants have violated the requirements under section 5 of FACA, 5 U.S.C. app. 2 § 5, that an advisory committee's membership be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee," *id.*

§ 5(b)(2); and that "appropriate provisions" be made "to assure that the advice and recommenda-tions of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment[,]" *id.* § 5(b)(3). The Council's members are allies of the Biden Administration. Most of the organizations have applauded the Administration's previous decisions, and nearly 80% of their leaders have donated to President Biden or other Democrats. Defendant Cardona selected members that are agreeable, not balanced.

6.      Second, the Defendants have already violated, and absent relief, will continue to violate, the non-discretionary transparency and public access requirements of section 10 of FACA, 5 U.S.C. app. 2 § 10. The Council has met without public notice; without making those meetings open to the public; and without timely notice in the Federal Register. *Id.* § 10(a). It has also failed to make all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the Council "available for public inspection." *Id.* § 10(b). The Plaintiffs only learned that the Council has met after the Department revealed that meetings had occurred in its second Press Release.

7.      Third, the Defendants have already violated, and absent relief, will continue to vi-olate, FACA's non-discretionary establishment requirements. 5 U.S.C. app. 2 § 9(a). No statute specifically authorizes the Council's establishment. *Id.* § 9(a)(1). Nor did the President specifically authorize the Council's establishment. *Id.* Nor did Secretary Cardona publish notice of the Coun-cil's establishment in the Federal Register. *Id.* § 9(a)(2).

8.      Fourth, the Defendants have violated—and continue to violate—the oversight pro-visions of FACA and its interpreting regulations by failing to prepare and file a charter for the

Council with all necessary political bodies, including but not limited to the Congressional committees that would otherwise exercise oversight responsibility over the Council. *Id.* § 9(c). Nor have the Defendants assigned a Designated Federal Officer to the Council to ensure compliance with FACA, and any other applicable laws and regulations. In other words, the Defendants have shielded the Council from any meaningful oversight.

9.     In sum, despite benefiting from the "political legitimacy" that comes with invoking an official advisory committee, *Cummock v. Gore*, 180 F.3d 282, 292 (D.C. Cir. 1999), the Defendants have shirked nearly all FACA requirements.

10.     Each Plaintiff is particularly and concretely injured by the Defendants' violations of FACA. By establishing an advisory committee composed of members holding common views—and excluding organizations with competing views—and conducting meetings behind closed doors without disclosing the matters discussed in those meetings, the Defendants have impaired each Plaintiff's mission, and the Plaintiffs have no opportunity to have a representative voice on the Council.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction under 5 U.S.C. § 704 and 28 U.S.C. §§ 1331 and 1361.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e) because all the Defendants reside in this district, where a substantial part of the acts and omissions giving rise to this action took place.

## PARTIES

13.     Plaintiff America First Legal Foundation is a nonprofit corporation that promotes government transparency and accountability by gathering official government information, ana-

lyzing it, and disseminating it to the public through reports, press releases, media platforms including social media, and by posting government records on its website for use by the public, scholars, and others. Among other things, America First Legal has published a toolkit for parents to use to assert their rights under the Protection of Pupil Rights Amendment. It also serves as legal counsel to members of the public, including parents challenging unlawful policies of school districts across the country.

14.     Plaintiff Fight for Schools and Families is a non-partisan political action committee focused on electing common-sense candidates that commit to policies that support equal opportunity, tolerance, meritocracy, and achievement.

15.     Plaintiff Parents Defending Education is a nationwide, nonpartisan, grassroots organization, whose members are primarily parents of school-aged children. Its mission is to prevent—through advocacy, disclosure, and, if necessary, litigation—the politicization of K-12 education.

16.     Defendant Miguel Cardona is the Secretary of Education. Plaintiffs sue him in his official capacity.

17.     Defendant Department of Education is the federal agency of the United States in which the Council is housed.

18.     Defendant National Parents and Families Engagement Council is an advisory committee established by the Department on June 14, 2022.

<u>LEGAL FRAMEWORK</u>

19.     FACA applies to "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . established or utilized by one or more agencies . . . in the interest of obtaining advice or recommendations for

the President or one or more agencies or officers of the Federal Government," defining such groups as "advisory committees." 5 U.S.C. app. 2 § 3(2).

20.     Only those committees that are "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government" or "created by the National Academy of Sciences or the National Academy of Public Administration" fall outside the definition of "advisory committee" under the Act. 5 U.S.C. app. 2 § 3(2). And all of the provisions of FACA apply to advisory committees except when an "Act of Congress establishing any such advisory committee specifically provides otherwise." 5 U.S.C. app. 2 § 4(a).

21.     FACA mandates that "[n]o advisory committee shall be established unless such establishment is (1) specifically authorized by statute or by the President; or (2) determined as a matter of formal record, by the head of the agency involved after consultation with the Administrator, with timely notice published in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. app. 2 § 9(a).

22.     FACA also orders that "[u]nless otherwise specifically provided by statute or Presidential directive, advisory committees shall be utilized solely for advisory functions. Determinations of action to be taken and policy to be expressed with respect to matters upon which an advisory committee reports or makes recommendations shall be made solely by the President or an officer of the Federal Government." 5 U.S.C. app. 2 § 9(b).

23.     FACA requires that in establishing an advisory committee, the agency heads "shall" follow the guidelines of the statute, 5 U.S.C. app. 2 § 5(c), including that the directive establishing the advisory committee must, among other things, "require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be

performed by the advisory committee" and "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." *Id.* § 5(b)(2)-(3).

24.     FACA's implementing regulations, promulgated by the General Services Administration, require each advisory committee to have a plan to attain fairly balanced membership. The plan must "ensure that, in the selection of members for the advisory committee, the agency will consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee. Advisory committees requiring technical expertise should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed." 41 C.F.R. § 102-3.60(b)(3).

25.     The charter of each advisory committee must be filed by the "Committee Management Officer designated in accordance with section 8(b) of the Act, or . . . another agency official designated by the agency head." 41 C.F.R. § 102-3.70.

26.     No advisory committee "shall meet or take any action until an advisory committee charter has been filed with . . . the head of the agency to whom any advisory committee reports and with the standing committees of the Senate and of the House of Representatives having legislative jurisdiction of such agency." 5 U.S.C. app. 2 § 9(c). The advisory committee charter must also be filed with the Library of Congress and the Secretariat. *See* 41 C.F.R. § 102-3.70(a)(3)–(4).

27.     Each advisory committee must also have a Designated Federal Officer ("DFO") designated by the agency head. 41 C.F.R. § 102-3.120; *see* 5 U.S.C. app. 2 § 10(e). A committee's DFO is responsible for calling meetings of the committee, approving the agenda for all committee

meetings, attending meetings, adjourning any meeting when they determine it to be "in the public interest," and chairing the meeting when directed by the agency head. 41 C.F.R. § 102-3.120.

28.     FACA demands transparency in the procedures and meetings of advisory committees. All advisory committee meetings must be open to the public and must be timely noticed in the Federal Register. 5 U.S.C. app. 2 § 10(a)(1)-(2). Meetings must be noticed in the Federal Register at least fifteen days before the meeting is to be held. 41 C.F.R. § 102-3.150(a).

29.     Interested members of the public must "be permitted to attend, appear before, or file statements with any advisory committee," subject only to "reasonable" regulations set by the Administrator of General Services. 5 U.S.C. app. 2 § 10(a)(3). Although portions of meetings may be closed where the President determines that closure is provided for under 5 U.S.C. § 552b(c) (the federal Open Meetings statute), any such determination must be made in a writing that sets forth the reasons for the conclusion. 5 U.S.C. app. 2 § 10(d).

30.     Subject to the provisions of the Freedom of Information Act, 5 U.S.C. § 552, "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports." 5 U.S.C. app. 2 § 10(b).

31.     FACA mandates that "[d]etailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee. The accuracy of all minutes shall be certified to by the chair-

man of the advisory committee." 5 U.S.C. app. 2 § 10(c). Advisory committees must make available copies of transcripts of advisory committee meetings to "any person" at only the "actual cost of duplication." 5 U.S.C. app. 2 § 11(a)

32.     These requirements reflect FACA's goal of ensuring that "agencies should seek to be as inclusive as possible." 41 C.F.R. § 102-3.95(d).

33.     Each of the requirements of FACA is mandatory on the appointing authority, in this case, Secretary Cardona, and on the advisory committee itself.

<u>FACTS</u>

34.     No statute specifically authorizes the establishment of the Council.

35.     The President has not purported to specifically authorize the establishment of the Council.

36.     Notice of the establishment of the Council has not been published in the Federal Register.

37.     Defendant Cardona has not purported to appoint a DFO for the Council as FACA requires. 41 C.F.R. § 102-3.120.

38.     No Defendant has purported to file an advisory committee charter with the Department; Senate Health, Education, Labor, and Pensions Committee; House Committee on Education and Labor; Library of Congress; or Secretariat.

39.     According to the Department, the Council has been actively meeting to perform its duties.

40.     If the Council has not yet met, the Department's June 14, 2022, Press Release announcing the Council says that the Council intends to meet "[i]n the coming weeks."

41.     The Council's membership is skewed because it is disproportionally composed of the Biden Administration's supporters, and fails to reflect the diversity of opinions actually held by American parents, families, and caregivers, as it must for an objective and competent deliberative process.

42.     The Council is composed of representatives from the following fourteen organizations:

  a.   The Council of Parent Attorneys and Advocates ("COPAA");

  b.   Fathers Incorporated;

  c.   Generations United;

  d.   Girls Inc.;

  e.   League of United Latin American Citizens ("LULAC");

  f.   Mocha Moms;

  g.   National Association for Family, School, and Community Engagement ("NAFSCE");

  h.   National Action Network ("NAN");

  i.   National Military Family Association ("NMFA");

  j.   National Parent Teacher Association ("PTA");

  k.   National Parents Union ("NPU");

  l.   The National Center for Parent Leadership, Advocacy, and Community Empowerment ("PLACE");

  m.   United Parent Leaders Action Network ("UPLAN"); and

  n.   UnidosUS.

43.     A substantial number of these organizations have supported this Administration and its policies. Specifically:

    a.  **Seven (50%)** organizations have publicly expressed support for actions taken by the Biden Administration;[1]

    b.  **Eleven (78.57%)** organizations' highest-ranking executive have donated to President Biden, Democratic lawmakers, Democratic fundraisers, or other associations or entities affiliated with Democrats;[2]

---

[1] Denise Marshall, *COPAA Statement on Proposed Increases to Support Special Education in the President's Annual Budget*, COPPA (Apr. 9, 2021), https://bit.ly/3bN09FD; Stephanie J. Hull, *Statement on Executive Orders to Promote Gender Equity*, Girls Inc., https://bit.ly/3Ifr8G6 (last visited June 20, 2022); *LULAC Calls Latest Biden Immigration Actions Positive*, LULAC, https://bit.ly/3AvT8TY (last visited June 20, 2022); The Mocha Moms, Inc. National Board, *Mocha Moms, Inc. Congratulates Judge Ketanji Brown Jackson*, Mocha Moms, Inc.: Mocha Blog (Apr. 8, 2022), https://bit.ly/3AuqAu3; *Al Sharpton Issues Statement in Support of Biden Executive Order on Policing, Calls on Senate to Pass George Floyd Justice in Policing Act*, Nat'l Action Network (May 24, 2022), https://bit.ly/3AqtAHS; Heidi May Wilson, *National PTA Applauds President Biden's Fiscal Year 2023 Budget Proposal*, Nat'l PTA (Apr. 1, 2022), https://bit.ly/3RbxQRw; Janet Murguía, *UnidosUS Statement on President Biden's Executive Order on Police Reform*, UnidosUS (May 26, 2022), https://bit.ly/3P35Xcv.

[2] *Individual Contributions*, FEC, https://bit.ly/3R73n7b (last visited June 20, 2022) (Denise Marhsall, COPAA); *Individual Contributions*, FEC, https://bit.ly/3R9SYYi (last visited June 20, 2022) (Donna Butts, Generations United); *Individual Contributions*, FEC, https://bit.ly/3R73vnb (last visited June 20, 2022) (Stephanie Hull, Girls Inc.); *Individual Contributions*, FEC, https://bit.ly/3IhIiTm (last visited June 20, 2022) (Domingo Garcia, LULAC); *Individual Contributions*, FEC, https://bit.ly/3IlzITB (last visited June 20, 2022) (Vito Borrello, NAFSCE); *Individual Contributions*, FEC, https://bit.ly/3ylMigZ (last visited June 20, 2022) (Al Sharpton, NAN); *Individual Contributions*, FEC, https://bit.ly/3OPyrGM (last visited June 20, 2022) (Besa Pinchotti, NMFA); *Individual Contributions*, FEC, https://bit.ly/3AwcAQE (last visited June 20, 2022) (Nathan Monell, NPTA); *Individual Contributions*, FEC, https://bit.ly/3OOHFmH (last visited June 20, 2022) (Keri Rodrigues, NPU); *Individual Contributions*, FEC, https://bit.ly/3AycaZR (last visited June 20, 2022) (Nora Thompson, PLACE); *Individual Contributions*, FEC, https://bit.ly/3afsbcD (last visited June 20, 2022) (Janet Murguía, UnidosUS).

    c.  **Nine (64.29%)** organizations have advocated for stricter gun control for school-safety purposes;[3]

    d.  According to a report, at least **seven (50%)** of the organizations are aligned with the Democratic Party on LGBTQ issues;[4]

    e.  President Biden spoke at NAN's national convention;[5]

    f.  The President of NPU defended the Biden Administration's controversial Memorandum on October 4, 2021, that addressed alleged threats against school boards;[6]

---

[3] Jamie Anderson, *Report on Gun Safety Released by AFT, NEA, and Everytown for Gun Safety*, COPAA (Feb. 11, 2019), https://bit.ly/3NIhm09; *Generations United's Statement on Tragedies in Buffalo and Uvalde*, Generations United, https://bit.ly/3P5jLmS (last visited June 24, 2022); *Girls Inc. Releases Statement on Gun Violence*, Girls Inc., https://bit.ly/3P1BPhw (last visited June 24, 2022); *LULAC Urges Senate Lawmakers to Take Bipartisan Action and Pass Gun Law Reforms*, LULAC, https://bit.ly/3ynJLts (last visited June 24, 2022); Interdisciplinary Group on Preventing School and Community Violence, *Call for action to prevent gun violence in the United States of America*, USC Suzanne Dworak-Peck (Mar. 1, 2018), https://bit.ly/3RfoLXK (NAFSCE); *Position Statements – Firearms*, Nat'l PTA (2021), https://bit.ly/3ynPjO9; Letter from National Parents Union to President Biden (May 27, 2022) (available at https://bit.ly/3ynPo4p); Janet Murgía, *We need common sense gun safety measures and mental health resources,* UnidosUS Blog (June 16, 2022), https://bit.ly/3yk28cf; *see also* Press Release, Nat'l Action League, Rev. Al Sharpton & National Action Network Re-Iterate The Call For National Gun Control As Sharpton & Brooklyn D.A. Charles Hynes Prepare To Occupy the Corner Where A 13-Year-Old Was Shot Last Night In Brooklyn (Aug. 23, 2012) (available at https://bit.ly/3bGBrGP).

[4] Ben Johnson, *A Look at Who's on Biden's Parents Council*, The Daily Signal (June 21, 2022), https://dailysign.al/3yMvhyd.

[5] *President Joe Biden to Deliver Opening Remarks at NAN's National Virtual Convention*, Nat'l Action Network (Apr. 13, 2021), https://bit.ly/3AqQmPX.

[6] Chrissy Clark, *Biden Creates 'Parents Council' That Includes People Who Publicly Defended Letter Labeling Parents 'Domestic Terrorists'*, The Daily Caller (June 14, 2022, 6:11 PM), https://bit.ly/3IfNuav.

     g.   NMFA's former Executive Director was appointed to serve in the Biden Administration;[7]

     h.   LULAC openly endorsed Secretary Cardona;[8] and

     i.   LULAC's National President was a Democratic lawmaker.[9]

44.    By contrast, **none (0%)** of the organizations' highest-ranking executive donated to Republicans or conservative or libertarian organizations.

45.    **None (0%)** of the organizations has publicly criticized the Biden Administration's masking policy for students.

46.    **None (0%)** of the organizations has publicly voiced concern over the Biden Administration's October 4, 2021, Memorandum that addressed alleged threats to school boards.

47.    **None (0%)** of the organizations has spoken against critical race theory curriculum in K-12 schools.

48.    To have a fair balance of viewpoints and competent deliberation on students' needs, there must be representation from different parts of the political and ideological spectrum. That is not the case here, as the Council consists of groups that already support the Biden Administration. The Council is far from balanced.

49.    The members of the Council were apparently appointed when the Council was established. Parents Defending Education thus had no opportunity to formally apply to be on the

---

[7] *President Biden Announces Key National Security Nominations*, White House (Sept. 21, 2021), https://bit.ly/3afsOmv.

[8] *LULAC National Education Chair Calls Selection of Dr. Miguel Cardona a New Opportunity*, LULAC (Dec. 23, 2020), https://bit.ly/3yJEPK4.

[9] *LULAC National President Domingo Garcia*, LULAC, https://bit.ly/3bN1CvD (last visited June 20, 2022).

Council. If there had been such an opportunity, Parents Defending Education would have applied to be on the Council. Alternatively, if Parents Defending Education had been invited to be a member of the Council, it would have joined the Council.

50.     Including Parents Defending Education on the Council would lead to greater balance. Parents Defending Education and its members have fundamentally different viewpoints than the Council's current members.[10]

51.     The Defendants' failure to comply with FACA—including their failure to publicize the Council's creation, charter, and activities as required by law, and their failure to ensure a proper balance of views on the Council—causes injury to Parents Defending Education's interests in preventing the politicization of K-12 education and disclosing to parents and the public potential government policies relevant to that education.

52.     The Defendants' violations, particularly their failure to properly balance the Council and their improper influence, increase the likelihood of politicization in K-12 education through the Council's influence on government policymaking. The Defendants' violations also decrease the Council's transparency. Parents Defending Education must therefore expend additional resources to investigate, monitor, and respond to the Council and its activities, so that it can fulfill its mission of preventing politicization in K-12 education and informing parents about educational policy issues. By devoting resources in response to the Council, Parents Defending Education must divert resources from its normal operations.

53.     Further, the Defendants' failure to publicize information as required by FACA inhibits Parents Defending Education's ability to scrutinize the Council's activities and limits its opportunity for oversight.

---

[10] *See About Us*, Parents Defending Education, https://bit.ly/3ahOHRX.

54.     The Defendants have limited Parents Defending Education's ability to have a representative voice on the Council on an issue with which it is engaged.

55.     Judicial relief against the Defendants for their legal violations would likely redress Parents Defending Education's injuries by, *inter alia*, allowing it to maintain its resources as allocated on other priorities relevant to its mission, and by giving it a voice on a properly constituted Council.

56.     The Defendants' failure to comply with FACA—particularly their failure to publicize its creation, charter, and activities as required by law—causes injury to Plaintiff America First Legal's interest in promoting government transparency and accountability, and fighting for the rights of parents to be involved in the upbringing of their children.

57.     Because of the Defendants' violations, America First Legal must expend additional resources to investigate and monitor the Council and its activities, so that it can fulfill its mission of holding the government accountable and educating the public about the government's activities and policies.

58.     Judicial relief against the Defendants for their legal violations would likely redress America First Legal Foundation's injuries by, *inter alia*, allowing it to maintain its resources as allocated on other priorities relevant to its mission.

59.     Were Plaintiff Fight for Schools and Families invited to be a member of the Council, it would agree. But Fight for Schools and Families was not invited, and it had no opportunity to formally apply to be on the Council. It would have joined the Council if it was invited, or it would have applied if there was an application process.

60. Its inclusion would lead to greater balance on the Council, as Fight for Schools and Families has a fundamentally different viewpoint than the Council's current members.[11]

61. The Defendants' failure to comply with FACA— including their failure to publicize the Council's creation, charter, and activities as required by law, and their failure to ensure a proper balance of views on the Council—causes injury to Fight for Schools and Families' interests in protecting students from political agendas.

62. The Defendants' violations, particularly their failure to properly balance the Council, frustrates Fight for Schools and Families' mission to ensure that parents' concerns and inputs are not ignored by decision-makers. Fight for Schools and Families must therefore expend additional resources to investigate, monitor, and respond to the Council and its activities, so that it can fulfill its mission. By devoting resources in response to the Council, Fight for Schools and Families must divert resources from its normal operations.

63. Further, the Defendants' failure to publicize information as required by FACA inhibits Fight for Schools and Families' ability to scrutinize the Council's activities and limits its opportunity for oversight of the Council.

64. The Defendants have limited Fight for Schools and Families' ability to have a representative voice on the Council on an issue with which it is engaged.

65. Judicial relief against the Defendants for their legal violations would likely redress Fight for Schools and Families' injuries by, *inter alia*, allowing it to maintain its resources as allocated on other priorities relevant to its mission, and by giving it a voice on a properly constituted Council.

---

[11] *See Why We Fight*, Fight for Schools and Families, https://bit.ly/3uo8upx.

CLAIMS FOR RELIEF

COUNT I
Administrative Procedure Act; 5 U.S.C. § 706
Appointment of Council Members and Public Notice and Access in Violation of FACA

66.     The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

67.     Defendant Cardona is the agency head responsible for appointing members to the Council.

68.     FACA requires that Defendant Cardona ensure that the membership of the Council is "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b)(2).

69.     Defendant Cardona has appointed members that are like-minded and are already supportive of this Administration. Nearly 80% of the members' heads have donated to President Biden, a Democratic fundraiser, or other Democratic candidates. Half of the organizations have commended this Administration for its previous actions. Defendant Cardona did not appoint members with differing viewpoints. Because the points of view are largely from one angle, the Council is not fairly balanced.

70.     FACA requires that Defendant Cardona, as head of the agency to which the Council reports, "designate a Federal officer . . . to be the [Designated Federal Officer]" for the Council. 41 C.F.R. § 102-3.120.

71.     FACA forbids "any meeting in the absence of [a Designated Federal Officer]." 5 U.S.C. app. 2 § 10(e).

72.     FACA orders that "[a]dvisory committees shall not hold any meetings except at the call of, or with the advance approval of, a [Designated Federal Officer]." *Id.* § 10(f).

73.     Defendant Cardona has not appointed a DFO for the Council, yet the Council has met, or intends to meet "[i]n the coming weeks."

74.     FACA requires that "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at . . . the agency to which the advisory committee reports until the advisory committee ceases to exist." 5 U.S.C. app. 2 § 10(b).

75.     The Department has failed to ensure that the documents made available to, prepared for, or prepared by the Council are available through its offices.

76.     FACA orders that "[n]o advisory committee shall be established unless establishment is (1) specifically authorized by statute or by the President; or (2) determined as a matter of formal record, by the head of the agency involved after consultation with the Administrator, with timely notice published in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. app. 2 § 9(a).

77.     The Defendants established the Council with no specific authorization by statute or by the President, and notice of the establishment of the Council was not published in the Federal Register.

78.     By violating FACA, the Defendants are (a) acting without observance of procedure required by law; and (b) acting in a manner that is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (B) and (D).

79.     The Defendants' violations have injured the Plaintiffs by limiting the Plaintiffs' ability and right to have a representative voice on the Council on issues with which the Plaintiffs are engaged.

80.    These injuries to the Plaintiffs are likely to continue as long as the Defendants continue to operate and direct the operation of the Council out of compliance with the law.

81.    Each of these failures to comply with FACA's requirements constitutes final agency action under the APA. 5 U.S.C. § 706.

COUNT II
Mandamus, 28 U.S.C. § 1361
Violation of FACA — Establishment

82.    The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

83.    FACA orders that "[n]o advisory committee shall be established unless such establishment is (1) specifically authorized by statute or by the President; or (2) determined as a matter of formal record, by the head of the agency involved after consultation with the Administrator, with timely notice published in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. app. 2 § 9(a).

84.    The Council was established without specific authorization by a statute or by the President, and the notice of its establishment was not published in the Federal Register, in violation of FACA.

85.    "[B]ecause an advisory committee is not an agency subject to the APA and FACA provides no private right of action," "[m]andamus is the only vehicle for [the Plaintiffs'] claims against" the Council. *Barr*, 496 F. Supp. 3d at 145.

COUNT III
Mandamus, 28 U.S.C. § 1361
Violation of FACA — Fairly Balanced Council Free of Inappropriate Influence

86.    The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

87.     The Council was established to "facilitate strong and effective relationships between schools and parents, families and caregivers."

88.     Because the Council is a "council . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government," 5 U.S.C. app. 2 § 3(2), it is an "advisory committee" as defined in FACA.

89.     The Council is not an "intergovernmental committee" exempted from FACA's requirements.

90.     Because the Council is not exempted from FACA's requirements, it must be "fairly balanced in terms of the points of view represented and the functions to be performed." 5 U.S.C. app. 2 § 5(b)(2).

91.     As set forth above, the Council's members are not fairly balanced in terms of their points of view on issues being studied and addressed by the Council. The Council disproportionately represents views that align with the Biden Administration and fails to reflect the diversity of opinions held by American parents, families, and caregivers.

92.     Further, to comply with FACA, committees have a nondiscretionary duty to "not be inappropriately influenced by the appointing authority or by any special interest." *Id.*§ 5(b)(3).

93.     The Biden Administration has "inappropriately influenced" the Council through its outspoken aggression towards parents that the National School Board Association accused of "domestic terrorism and hate crimes."[12] While the NSBA later apologized for this mischaracterization,

---

[12] Memorandum from Attorney General Garland to FBI Director, Director of the Executive Office for U.S. Attorneys, Assistant Attorney General of the Criminal Division, and United States Attorneys (Oct. 4, 2021) (available at https://bit.ly/3NQJ4Yx); *see generally* Letter from Viola Garcia,

the DOJ's memorandum discussing alleged threats remains available on the DOJ's website.[13]

COUNT IV
Mandamus, 28 U.S.C. § 1361
Violation of FACA — Charter Filing

94.     The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

95.     FACA states that "[n]o advisory committee shall meet or take any action until an advisory committee charter has been filed with . . . the head of the agency to whom any advisory committee reports and with the standing committees of the Senate and of the House of Representatives having legislative jurisdiction of such agency." 5 U.S.C. app. 2 § 9(c).

96.     The Council reports to the Department and is subject to the legislative jurisdiction of the Senate Health, Education, Labor, and Pensions Committee and the House Education and Labor Committee.

97.     The Council has a nondiscretionary duty to file an advisory committee charter with the Department, the Senate Health, Education, Labor, and Pensions Committee, and the House Education and Labor Committee before "meet[ing] or tak[ing] any action."

98.     The Council has not filed an advisory committee charter with the Department, the Senate Health, Education, Labor, and Pensions Committee, or the House Education and Labor Committee.

99.     FACA's implementing regulations also require that an advisory committee charter be filed with the Library of Congress and the Secretariat. *See* 41 C.F.R. § 102-3.70(a)(3)–(4).

---

President, NSBA, and Chip Slaven, Interim Executive Director & CEO, NSBA, to President Biden (Sept. 29, 2021) (available at https://bit.ly/3yKx72A).

[13] Memorandum from NSBA Board of Directors to NSBA Members (Oct. 22, 2021) (available at https://bit.ly/3uu34JX).

100.    The Council has not filed an advisory committee charter with the Library of Congress, nor has it filed a charter with the Secretariat.

101.    According to the Department, the Council actively meets.

102.    If the Council has not met, it has still "take[n] . . . action" because it is preparing to meet. According to the Department's June 14 Press Release, "the Council will meet" "[i]n the coming weeks."

COUNT V
Mandamus, 28 U.S.C. § 1361
Violation of FACA — Designated Federal Officer

103.    The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

104.    FACA requires that Defendant Cardona, as head of the agency to which the Council reports, "designate a Federal officer . . . to be the [Designated Federal Officer]" for the Council. 41 C.F.R. § 102-3.120.

105.    FACA forbids "any meeting in the absence of [a Designated Federal Officer]." 5 U.S.C. app. 2 § 10(e).

106.    FACA orders that "[a]dvisory committees shall not hold any meetings except at the call of, or with the advance approval of, a [Designated Federal Officer]." *Id.* § 10(f).

107.    The Council has no Designated Federal Officer, yet the Council meets, or at least it intends to meet "[i]n the coming weeks."

COUNT VI
Mandamus, 28 U.S.C. § 1361
Violation of FACA — Public Notice and Access

108.    Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

109.    FACA requires that "[e]ach advisory committee meeting shall be open to the public." 5 U.S.C. app. 2 § 10(a)(1).

110.    The Council thus has a nondiscretionary duty to ensure its meetings are open to the public.

111.    Because the Council has met without providing the public with the opportunity to participate or listen in, its meetings have not been "open to the public."

112.    FACA also requires that "timely notice of each such meeting shall be published in the Federal Register, and the Administrator shall prescribe regulations to provide for other types of public notice," *Id.* § 10(a)(2).

113.    To constitute "timely notice," the Council's notice must be published in the Federal Register at least 15 days prior to the meeting, and must include: (1) the name of the advisory committee; (2) the time, date, and place of the meeting; (3) a summary of the agenda and topics to be discussed; (4) a statement of whether any parts of the meeting will be closed, along with an explanation for such closure; and (5) contact information for a designated officer for those who wish to learn more information. 41 C.F.R. § 102-3.150(a).

114.    The Council has a nondiscretionary duty to publish notice of its meetings and hearings in the Federal Register at least 15 days prior to any such meeting or hearing.

115.    The Defendants have failed to provide timely notice of any of the Council's meetings.

116.    The Defendants have failed to otherwise provide public notice of any kind for any of the meetings conducted to date.

117.    FACA also requires that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports." 5 U.S.C. app. 2 § 10(b).

118.    The Defendants thus have a nondiscretionary duty to make all documents "available to or prepared for or by" the Council, including meeting agendas, witness bios, hearing transcripts, and record evidence, available to the public.

119.    The Defendants have failed to make all necessary documents publicly available.

COUNT VII
Declaratory Judgment Act, 28 U.S.C. § 2201
The Defendants Are in Violation of FACA

120.    The Plaintiffs incorporate the allegations above by reference as if fully set forth herein.

121.    When statutory duties are violated, courts may also act under the Declaratory Judgment Act, including as an alternative or in addition to granting mandamus relief. *Citizens for Responsibility & Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 222 (D.D.C. 2009).

122.    All Council hearings must be noticed in advance in the Federal Register; by apparently meeting without notice, the Defendants have violated § 10(a)(2) of FACA.

123.    All meetings of the Council must be open to the public; by failing to grant public access to its hearings, the Defendants have violated § 10(a)(1), (3) of FACA.

124.    By not ensuring that the "membership of the advisory committee . . . be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee," Defendant Cardona has violated § 5(b)(2) of FACA.

125.    By failing to make any "appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment," the Defendants have violated § 5(b)(3) of FACA.

126.    By establishing the Council without an authorizing statute or authorization from the President, and without publishing the establishment in the Federal Register, the Defendants have violated § 9(a) of FACA.

127.    By apparently meeting prior to filing the Council charter, the Defendants have violated § 9(c) of FACA. In the alternative, by preparing to meet prior to filing the Council charter, the Defendants are "tak[ing] . . . action" in violation of § 9(c) of FACA.

128.    By preparing to meet without an appointed Designated Federal Officer, the Defendants are in violation of § 10(e) and § 10(f) of FACA.

129.    By failing to make available all "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by" the Council, the Defendants are in violation of § 10(b) of FACA.

130.    By failing to make transcripts of each Council hearing available, the Defendants are in violation of § 11 of FACA.

131.    The Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the foregoing conduct violates FACA.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, the Plaintiffs respectfully pray that this Court enter judgment in their favor and against the Defendants, and:

a.   Declare that the National Parents and Families Engagement Council is an advisory committee subject to the requirements of the Federal Advisory Committee Act, 5 U.S.C. app. 2 §§ 1-16; and that the Defendants have violated FACA by (1) failing to ensure that the Council's membership is fairly balanced; (2) establishing the Council without specific authorization from the President or a statute, and failing to publish the establishment in the Federal Register; (3) failing to file an advisory committee charter with all required entities; (4) failing to appoint necessary officers for oversight; (5) failing to provide members of the public with timely notice of the Council's meeting(s); (6) failing to grant the public access to Council meetings; (7) failing to make agendas, minutes, transcripts, witness bios, and other record evidence available to the public; and (8) failing to make appropriate provisions to assure that the Council would not be inappropriately influenced by the appointing authority or any special interest.

b.   Declare the Council is not properly constituted;

c.   Enjoin Defendants Cardona, the Department, and the Council, and all of its working groups, from holding any meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Council, whether remotely or in person, until their violations of FACA are remedied;

d.   Enjoin Defendants Cardona, the Department, and the Council from submitting, accepting, publishing, employing, or relying upon any report or recommendations produced by the Council for any official purpose whatsoever, directly or indirectly, including indicating in any way that any report or recommendation of the

25

Council reflects the views of a lawfully constituted advisory committee, until

their violations of FACA are remedied;

e.   Vacate the establishment of the Council; and

f.   Such other and further relief the Court deems just, proper, or equitable.

Respectfully submitted,

*/s/ J. Michael Connolly*
J. Michael Connolly
Bar ID: 995815
Cameron T. Norris
Bar ID: VA083
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com

*/s/ Christopher E. Mills*
Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

*/s/ Gene P. Hamilton*
Gene P. Hamilton
D.C. Bar No. 1619548
AMERICA FIRST LEGAL FOUNDATION
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Dated: July 6, 2022