# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| America First Legal Foundation, Fight for Schools and Families, and Parents Defending Education, | |
| *Plaintiffs*, v. | Civil Action No. 1:22-cv-1947 |
| Miguel Cardona, in his official capacity as United States Secretary of Education, et al., | |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## APPLICATION FOR PRELIMINARY INJUNCTION

J. Michael Connolly
Bar ID: 995815
Cameron T. Norris
Bar ID: VA083
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com

Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Gene P. Hamilton
D.C. Bar No. 1619548
AMERICA FIRST LEGAL FOUNDATION
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

# TABLE OF CONTENTS

Introduction ....................................................................................................... 1

Statement of the Case ........................................................................................ 3

Legal Standard .................................................................................................. 9

Argument ........................................................................................................... 9

I.      Plaintiffs are likely to succeed on the merits of their claims. ....................... 10

    A.      The Council is an advisory committee subject to FACA. ........................ 11

        1.      The Council has an organized structure. ................................. 12

        2.      The Department established the Council. ................................ 13

    B.      The Council's creation, composition, and operations violate FACA. ......... 13

        1.      The Defendants have violated FACA's establishment procedures. ....... 13

        2.      The Council is not fairly balanced. .......................................... 15

        3.      The Council is inappropriately influenced by the Biden
              Administration. ....................................................................... 18

        4.      The Council does not have a Designated Federal Officer....................... 19

        5.      The Council has violated FACA by failing to disclose required
              information. ............................................................................. 20

    C.      The Plaintiffs are likely to succeed on their APA, declaratory relief,
        and mandamus claims. ............................................................................. 21

II.     The remaining factors weigh in favor of a preliminary injunction. ................. 24

Conclusion ........................................................................................................ 27

## INTRODUCTION

The Federal Advisory Committee Act ("FACA") was enacted in 1972 out "of a desire to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government.'" *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 445–46 (1989) (citing 5 U.S.C. app. 2 § 2(a)). "FACA's terms promote transparency, accountability, and open public participation in executive branch decisions and prevent informal advisory committees from exerting improper one-sided influence." *VoteVets Action Fund v. Dep't of Veterans Affairs*, 992 F.3d 1097, 1101 (D.C. Cir. 2021). Among other terms, FACA requires that advisory committees be announced in the Federal Register, provide a charter and notice of open meetings, and have a balanced membership free of improper influence. 5 U.S.C. app. 2 §§ 4–11.

Despite these long-established requirements, the Department of Education and Secretary Cardona disregarded them all in purporting to establish a new advisory committee, the National Parents and Families Engagement Council. The Plaintiffs are likely to succeed in showing that the Defendants unlawfully established the Council, failed to ensure that the Council is fairly balanced, failed to adopt a provision to ensure that the Council will not be inappropriately influenced, failed to file a charter, failed to assign a Designated Federal Officer, and failed to disclose the information required by FACA. These violations establish a further violation of the Administrative Procedure Act, which requires that agencies take final actions in accordance with law. *See generally NAACP Legal Def. & Educ. Fund., Inc. v. Barr*,

496 F. Supp. 3d 116, 145 (D.D.C. 2020) (requiring an advisory committee to file a charter and otherwise follow FACA's procedural requirements, issuing an injunction that required the Attorney General to ensure that the committee had a fairly balanced membership, and "halt[ing]" all committee proceedings "until the requirements of FACA are satisfied").

The Defendants' violations work irreparable harm on the Plaintiffs, organizations dedicated to government accountability and stopping the politicization of K-12 education. The Defendants' failure to properly balance the Council's membership deprives the Plaintiffs of an opportunity to serve on the Council, or even a voice that represents their views. The Council's failure to publicize its creation and activities, including its meetings, requires the Plaintiffs to divert their resources from their existing mission and goals to monitoring and responding to the Council—expenditures of time and effort that would be unnecessary if the Council followed the law.

FACA states the public's interest in a transparent government that reflects the views of relevant constituencies: "FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (cleaned up). The Defendants' failure to follow FACA necessarily violates the public interest, and immediate relief is necessary to prevent ongoing deprivations of information and representative decision making.

2

Thus, the application for a preliminary injunction should be granted. The Court should enjoin Defendants Cardona, the Department, and the Council, and all of its working groups, from holding any meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Council, whether remotely or in person, until their violations of FACA are remedied. The Court should also enjoin the Defendants from submitting, accepting, publishing, employing, or relying upon any report or recommendations produced by the Council for any official purpose whatsoever, directly or indirectly, including indicating in any way that any report or recommendation of the Council reflects the views of a lawfully constituted advisory committee, until their violations of FACA are remedied.

## STATEMENT OF THE CASE

On June 14, 2022, the United States Department of Education purported to launch the National Parents and Families Engagement Council ("Council"). Declaration of Christopher Mills, Ex. 1. The Department claimed that the Council was created to "facilitate strong and effective relationships between schools and parents, families, and caregivers." *Id.* The press release announcing the Council said that the Council's main concerns include children's recovery from the COVID-19 pandemic; the methods schools are using to provide academic, mental health, and social and emotional support; and how the Council can best engage with schools. *Id.*

The Council is composed of 14 organizations selected by the Department. *Id.* The Department claims that these members "reflect the diversity of the education system." *Id.* Members include: The Council of Parent Attorneys and Advocates

("COPAA"); Fathers Incorporated; Generations United; Girls Inc.; League of United Latin American Citizens ("LULAC"); Mocha Moms; National Association for Family, School, and Community Engagement ("NAFSCE"); National Action Network ("NAN"); National Military Family Association ("NMFA"); National Parent Teacher Association ("PTA"); National Parents Union ("NPU"); The National Center for Parent Leadership, Advocacy, and Community Empowerment ("PLACE"); United Parent Leaders Action Network ("UPLAN"); and UnidosUS. *Id.* The Department has not specified the individuals from each group who will participate in Council matters.

The Council members do not represent diverse views. Instead, they are largely politically aligned with the Administration. Of the 14 organizations, seven (50%) have publicly expressed support for actions taken by the Biden Administration, Mills Decl. Exs. 3–9; eleven (78.57%) organizations' highest-ranking executive have donated to President Biden, Democratic lawmakers, Democratic fundraisers, or other associations or entities affiliated with Democrats, Mills Decl. Exs. 10–20; and at least seven (50%) are largely aligned with the Democratic Party on LGBTQ issues, Mills Decl. Ex. 30. Nine (64.29%) organizations have advocated for stricter gun control for school-safety purposes. Mills Decl. Exs. 21–29. None (0%) of the organizations' heads donated to Republicans or conservative organizations in the last 14 years. *See* Mills Decl. Exs. 10–20.[1] None of the organizations have publicly criticized the Biden

---

[1] Janet Murguía donated $1,500 to John McCain's presidential campaign in 2008, and a total of $1,500 to a Republican congressional candidate between 2006–07. At the time of these donations, Murguía was employed by the National Council of La Raza, the predecessor organization to UnidosUS. Overall, she has donated $33,700 to Democrats and $3,000 to Republicans. *See* Mills Decl. Ex. 20.

Administration's masking policy for students or the Biden Administration's October 4, 2021, Memorandum that addressed alleged threats to school boards. *See generally* Mills Decl. Ex. 38. And none of the organizations has spoken against critical race theory curriculum in K-12 schools.

Several of the organizations have even more obvious ties to this Administration. President Biden spoke at NAN's national convention. Mills Decl. Ex. 31. Kenneth Braswell, the CEO of Fathers Incorporated, "work[ed] with the Obama Administration for several years." Mills Decl. Ex. 37. The former executive director of NMFA openly endorsed President Biden, Mills Decl. Ex. 43, and a different former executive director was appointed to serve in the Biden Administration, Mills Decl. Ex. 33. Michelle Obama spoke at NMFA's summit in 2010. Mills Decl. Ex. 44. President Biden nominated PTA's director of strategic communications to serve in his Administration. Mills Decl. Ex. 45. The President of NPU—a former committee member on the Democratic National Committee's ("DNC") Ethnic Coordinating Council, Mills Decl. Ex. 46—defended the Administration's controversial October 4, 2021, Memorandum, Mills Decl. Ex. 32. PLACE hosted a webinar with employees from the Department of Education on "equitable education services for students of color, with disabilities, of limited English proficiency, and who are immigrants, LGBTQ, and/or low-income." Mills Decl. Ex. 47. LULAC—whose National President was a Democratic lawmaker, Mills Decl. Ex. 35—openly endorsed Secretary Cardona. Mills Decl. Ex. 34. LULAC's CEO worked for the DNC, served in Democrat Timothy Kaine's gubernatorial staff, and helps Democratic women run for office. Mills Decl.

Ex. 39. President Biden spoke at LULAC's banquet in 2013. Mills Decl. Ex. 51. And, on July 11, 2022, Jill Biden spoke at the UnidosUS's annual conference. Mills Decl. Ex. 49.

Additionally, many organizations have expressed disdain for Republicans or conservatives. COPAA tweeted the following quote from a speech delivered to their organization: "I cannot emphasize enough the danger civil rights are in from [the Trump] administration in our schools." Mills Decl. Ex. 36. NAFSCE's Vito Borrello has tweeted dozens of anti-Republican remarks; for example, he retweeted The Lincoln Project's tweet saying, "[l]ess than 78 hours until Donald Trump is no longer president. Hello, let's celebrate that." Mills Decl. Ex. 41. Fathers Incorporated singled out conservatives on its Twitter. Mills Decl. Ex. 50. UnidosUS tweeted, "[t]he extreme has become the Republican Party mainstream & their rhetoric falls too readily from the lips of candidates." Mills Decl. Ex. 48.

A few weeks after announcing the Council and its membership, the Department issued another press release reiterating the goals of the Council. Mills Decl. Ex. 2. That press release said that "[t]he Council *meets* to discuss" various issues. *Id.* (emphasis added). Details about the Council and its meetings are unavailable in the Federal Register or elsewhere. The two press releases are the only official sources that provide information on the Council. Notice of the establishment of the Council has not been published in the Federal Register. President Biden issued no Executive Order creating the Council, and no statute specifically authorized the establishment of the Council. The only pieces of information the Department has

disclosed to the public are the Council's members, the Council's goals, and that the Council "meets."

Because of the Defendants' disregard of FACA's requirements in forming and convening the Council, the Plaintiffs were forced to bring suit. The Plaintiffs are three organizations dedicated to government transparency and protecting education. None has adequate representation on the Council as constituted, and all suffer injury from that lack of representation, the Council's lack of transparency, and the Defendants' other FACA violations.

America First Legal is committed to holding the United States government accountable and educating the public about the government's activities and policies. Declaration of John A. Zadrozny ¶ 2. The Defendants' failure to follow FACA's notice and transparency requirement has forced America First Legal "to divert its resources from other priorities and instead expend extra time and money investigating and monitoring the Council's activities." *Id.* ¶ 5. "For instance, America First Legal has been forced to develop and file Freedom of Information Act requests about the Council's creation, which would have been unnecessary had the Defendants followed FACA's requirements." *Id.* ¶ 6.

Plaintiff Fight for School and Families is dedicated to protecting K-12 students from political agendas and ensuring that parents' inputs are heard by those who make decisions regarding their children's educations. Declaration of Ian Prior ¶ 2. It was not invited to join the Council, but it would have accepted such an invitation or otherwise applied to join had an opportunity been presented. *Id.* ¶¶ 4–5. Fight for

Schools and Families has no representation on the Council, for it "has a markedly different viewpoint from the Council's current members." *Id.* ¶ 6. Moreover, it "received no notice of the creation of the Council or of any of the Council's meetings, and it does not have access to any information on what has been discussed in the Council's meetings to date," all of which means that it "must devote extra resources to monitor and scrutinize the Council." *Id.* ¶¶ 7–8. This leaves it "less resources" for "its normal activities." *Id.* ¶ 9.

Finally, Plaintiff Parents Defending Education is a nationwide, grassroots membership organization whose members are primarily parents of school-aged children, and its "mission is to prevent the politicization of K-12 education." Declaration of Nicole Neily ¶¶ 2–3. Despite its expertise in this area, it was not invited to serve on the Council, and it did not "have any opportunity to apply to be a member." *Id.* ¶ 8. Had there been such an invitation or opportunity, Parents Defending Education would have taken it. *Id.* ¶ 9. "None of the Council's members properly represents Parents Defending Education's "values or goals," and the group "has different priorities and viewpoints than the Council's members." *Id.* ¶ 10. Because it is not represented on the Council and "because the lack of viewpoint diversity on the Council increases the likelihood of politicization in classrooms," Parents Defending Education "will need to devote extra time and resources to investigate and respond to the Council and its activities." *Id.* ¶ 12. Indeed, Parents Defending Education has already been forced to file a FOIA request to learn basic facts about the Council. *Id.* "Further, the Council's lack of transparency has made

8

monitoring the Council's activities much more difficult." *Id.* ¶ 13. "Because of the lack of transparency," Parents Defending Education "must expend additional resources to investigate and monitor the Council," thereby "divert[ing] resources from its normal operations." *Id.* These requests for documents tend to be time-consuming and costly. *Id.* ¶¶ 14–15.

## LEGAL STANDARD

A preliminary injunction is appropriate if the plaintiff establishes "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 283 (D.D.C. 2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The last two factors 'merge when the Government is the opposing party.'" *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Despite some suggestion that the law has changed, *id.*, the preliminary injunction factors have been balanced "on a sliding scale." *Beacon*, 308 F. Supp. 3d at 284.

## ARGUMENT

All factors support a preliminary injunction. First, the Plaintiffs have an overwhelming likelihood of success on the merits. The Council falls within FACA's scope, yet the Council was not announced in the Federal Register, it does not have a fairly balanced membership, it does not have a charter or a designed federal officer, and it has disregarded FACA's other requirements. Because the Department and

Defendant Cardona's failure to follow FACA in establishing and constituting the Council amounts to final agency action, the Plaintiffs have a cause of action against them under the Administrative Procedure Act, as well as a well-established mandamus cause against the Council itself. Courts in this district have not hesitated to grant relief in similar cases, including preliminary relief, because permitting a committee that has flouted FACA to continue operations works irreparable harm.

Second, the remaining factors weigh in favor of a preliminary injunction. Without relief, the Plaintiffs will continue to be deprived of a representative voice on the Council and will continue to be forced to divert their resources to monitor and respond to this Council that is actively seeking to avoid public oversight. And the public will be harmed too, for the point of FACA is to promote open and representative government; the Council's operations so far have been the opposite. The public interest lies in executive compliance with the law. The Court should grant the application for a preliminary injunction.

## I.    Plaintiffs are likely to succeed on the merits of their claims.

FACA imposes many procedural and substantive requirements on federal committees, all of which seek to ensure "that Congress and the public remain apprised of the[] existence, activities, and cost" of any federal advisory committees. *Ctr. for Arms Control & Non-Proliferation v. Lago*, No. 05-682, 2006 WL 3328257, at *2 (D.D.C. Nov. 15, 2006), *aff'd sub nom. Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836 (D.C. Cir. 2008). Under FACA, an advisory committee and the agency under which it operates must obey numerous nondiscretionary procedural

requirements, including those governing establishment, 5 U.S.C. app. 2 § 9, notice, *id.* § 10, membership, *id.* § 5, and disclosure, *id.* § 10.

The government has violated all of these requirements in establishing and operating the Council. The procedural prerequisites to the Council's formation were ignored, the membership of the Council is far from balanced, and the Council has disclosed none of the required material to the public. The Defendants' violations give rise to both APA and mandamus claims. Thus, the Plaintiffs are likely to succeed on the merits.

## A.     The Council is an advisory committee subject to FACA.

Under FACA, an advisory committee is "any committee, board, commission, council, conference, panel, task force, or other similar group" "which is . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government." 5 U.S.C. app. 2 § 3(2). The definition excludes committees that are "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government" and committees created by the National Academy of Sciences or the National Academy of Public Administration. *Id.* The D.C. Circuit has simplified the analysis into two inquiries: (1) whether the group had the structure of an advisory committee and (2) whether it was established by the federal government. *VoteVets*, 992 F.3d at 1103.

Based on the two Department press releases—which provide all the information available on the Council—the Council easily meets both factors to be considered an advisory committee subject to FACA. And no exception applies, as the

Council's membership is not composed wholly of full-time or permanent part-time employees of the Federal Government, and the Council was established by the Department. Thus, the Council is an advisory committee and must follow FACA's requirements.

### 1.  The Council has an organized structure.

FACA applies to agencies that have "'an organized structure, a fixed membership, and a specific purpose.'" *VoteVets*, 992 F.3d at 1104 (citing *Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 914 (D.C. Cir. 1993)). The entity must also "'render advice or recommendations, *as a group*, and not as a collection of individuals.'" *Id.* (quoting *Ass'n of Am. Physicians and Surgeons*, 997 F.2d at 913).

The Council meets all criteria to properly be considered an advisory committee. First, the Council "work[s] together" as a team "to serve the best interest of students." Mills Decl. Ex. 1. As a unit, it meets and works with the Department to achieve its goals. *Id.* That the Council works together as one entity is enough to show that it is sufficiently organized to be considered an advisory committee. *See VoteVets*, 992 F.3d at 1104–05 (holding that a group was sufficiently organized when it worked together as a group or team). Second, the Council is composed of a fixed group of 14 representatives from national organizations. Mills Decl. Ex. 1. Third, the Council has a specific purpose. As the Department explained in its press releases, the Council is tasked with "facilitat[ing] strong and effective relationships between schools and parents, families, and caregivers." *Id.* The Council is sufficiently structured to constitute an advisory committee under FACA.

### 2. The Department established the Council.

To show that an entity is "established" for the purposes of FACA, all a plaintiff needs to show is that the entity was "'actually formed by the agency'" and that the government selected the members. *VoteVets*, 992 F.3d at 1105 (quoting *Byrd v. EPA*, 174 F.3d 239, 245 (D.C. Cir. 1999)). The Department's own press releases state that the Council was formed, and its members were selected, by the government. Mills Decl. Exs. 1–2. The first press release says that the Department "create[d]," "launched," and "'establish[ed]'" the Council. Mills Decl. Ex. 1. Further, the press releases set forth the Council's membership, and several members indicated that they were directly appointed by the Department. Mills Decl. Exs. 52–53. Thus, the Council is an advisory committee subject to FACA.

### B.     The Council's creation, composition, and operations violate FACA.

Because the Council is subject to FACA, it must comply with the statute's nondiscretionary requirements that govern its establishment, membership, and disclosure. Yet the government has complied with none of these requirements, and it will continue to violate the statute absent immediate relief from this Court.

### 1. The Defendants have violated FACA's establishment procedures.

First, the Defendants violated FACA's procedural requirements that must be followed to create a lawful advisory committee. FACA orders that "[n]o advisory committee shall be established unless such establishment is (1) specifically authorized by statute or by the President; or (2) determined as a matter of formal record, by the head of the agency involved after consultation with the Administrator,

with timely notice published in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law." 5 U.S.C. app. 2 § 9(a). If the government uses the second route, "[t]he relevant implementing regulations require findings that the committee be 'essential to the conduct of agency business' and that 'the information to be obtained is not already available through another advisory committee or source within the Federal Government.'" *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 595–96 (S.D.N.Y. 2019) (quoting 41 C.F.R. § 102-3.30(a)).

Further, "[n]o advisory committee shall meet or take any action until an advisory committee charter has been filed with . . . the head of the agency to whom any advisory committee reports and with the standing committees of the Senate and of the House of Representatives having legislative jurisdiction of such agency." 5 U.S.C. app. 2 § 9(c). An advisory committee must also file a charter with the Library of Congress and the Secretariat. 41 C.F.R. § 102-3.70(a)(3)–(4). FACA enumerates 10 specific requirements that a charter must contain. 5 U.S.C. app. 2 § 9(c)(A)–(J).

The government here flouted all these requirements. Neither a statute nor the President specifically authorized the establishment of the Council. Yet contrary to the statute, Defendant Cardona did not purport to consult with the Administrator, no formal record indicates that the Council is operating in the public interest in connection with the Department's duties, and notice of the Council was not published in the Federal Register. The Department's two press releases provide the only

14

publicly available information on the Council and its creation. *See* Mills Decl. Exs. 1–2.

Moreover, the Council failed to fulfill its nondiscretionary duty to file a charter with the Department, the Senate Health, Education, Labor and Pensions Committee, the House Education and Labor Committee, the Library of Congress, and the Secretariat. According to the Department's second press release, the Council is meeting, Mills Decl. Ex. 2, but any meetings violate FACA. Injunctive relief is necessary.

### 2. The Council is not fairly balanced.

Next, FACA "require[s] the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." 5 U.S.C. app. 2 § 5(b)(2). This requirement "was designed to ensure that persons or groups directly affected by the work of a particular advisory committee would have some representation on the committee." *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 n. 2 (D.C. Cir. 1983). That is because "[a]dvisory committees are not just mechanisms for transmitting policy advice on a particular subject matter to the government"; they "also possess a kind of political legitimacy as representative bodies." *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 914.

To fulfill this goal, "before establishing a new committee, an agency head must consult with the Committee Management Secretariat at the GSA." *Barr*, 496 F. Supp. 3d at 134 (citing 41 C.F.R. § 102-3.60). "[T]he agency head must submit a 'description of the agency's plan to attain fairly balanced membership' that ensures 'the agency

15

will consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee.'" *Id.* (quoting 41 C.F.R.§ 102-3.60(b)(3)).

At the outset, the government violated FACA by failing to consult with the Committee Management Secretariat at the GSA. The Defendants provided no description of its plan to attain a fairly balanced membership.

Moreover, the current make-up of the Council is far from balanced in terms of points of view represented. The Department claimed that it picked its members to "reflect the diversity of the education system" and tasked them with "identify[ing] constructive ways to help families engage at the local level." Mills Decl. Ex. 1. Among other things, the Council's supposed "function" is to "be a channel for parents and families to constructively participate in their children's education by helping them understand the rights they have, create a feedback loop with schools to shape how American Rescue Plan (ARP) funds are deployed to meet students' needs, and identify summer learning and enrichment opportunities for children in their communities." *Id.* However important or noble that goal is, FACA places a nondiscretionary requirement on the Defendants to ensure that the Council's members are fairly balanced. Simply claiming that the Council is "diverse" does not satisfy this requirement—particularly when it is self-evidently *not* "diverse."

To have a fair balance of viewpoints and competent deliberation on students' needs, there must be fairly equal representation from both sides of the political and ideological spectrum. "FACA is designed to prevent commissions from, *inter alia*,

convening a group of like-minded individuals, excluding duly appointed members
with appointing viewpoints, and rubber-stamping the political agenda of the
appointing authority." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
464 F. Supp. 3d 247, 252 (D.D.C. 2020). Yet here, the Department appointed only
like-minded groups supportive of the current Administration. Of the Council's 14
members, seven (50%) have publicly expressed support for actions taken by the Biden
Administration. Mills Decl. Exs. 3–9. Eleven (78.57%) organizations' highest-ranking
executive have donated to President Biden, Democratic lawmakers, Democratic
fundraisers, or other associations or entities affiliated with Democrats. Mills Decl.
Exs. 10–20. None (0%) of those executives donated to Republicans or conservative or
libertarian organizations in the last 14 years. *See id.* As evidence of further
alignment, nine (64.29%) organizations have advocated for stricter gun control for
school-safety purposes, Mills Decl. Exs. 21–29, and at least seven (50%) of the
organizations are aligned with the Democratic party on LGBTQ issues, Mills Decl.
Ex. 30.

Individual members have an even more glaring loyalty to this administration
and its policies: President Biden spoke at NAN's national convention, Mills Decl. Ex.
31; Fathers Incorporated CEO worked with the Obama-Biden Administration "for
several years," Mills Decl. Ex. 37; NMFA's former executive director endorsed
President Biden, Mills Decl. Ex. 43; President Biden has appointed individuals from
NMFA and PTA to serve in his Administration, Mills Decl. Exs. 33, 45; NPU's
President—a former DNC operative, Mills Decl. Ex. 46—defended the Biden

17

Administration's controversial memorandum that addressed alleged threats against school boards, Mills Decl. Ex. 32; PLACE hosted a webinar with employees from the Department on, among other things, LGBTQ issues, Mills Decl. Ex. 47; LULAC openly endorsed Secretary Cardona, Mills Decl. Ex. 34; LULAC's National President was a Democratic lawmaker, Mills Decl. Ex. 35, and its CEO worked for the DNC and served in a Democratic governor's administration, Mills Decl. Ex. 39; Joe Biden spoke at LULAC's banquet in 2013, Mills Decl. Ex. 51; and on July 11 of this year, First Lady Jill Biden spoke at UnidosUS's annual conference, Mills Decl. Ex. 49. Tweets from COPAA, Mills Decl. Ex. 36, NAFSCE's Executive Director, Mills Decl. Ex. 41, Fathers Incorporated, Mills Decl. Ex. 50, and UnidosUS, Mills Decl. Ex. 48, show extreme disagreement with Republicans and conservatives. In other words, the Department picked members that are agreeable, not balanced. This violates FACA.

### 3. The Council is inappropriately influenced by the Biden Administration.

Under FACA, an advisory committee's founding documents must "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. app. 2 § 5(b)(3). This provision was "designed to counter 'the belief that these advisory committees do not adequately and fairly represent the public interest or that they may be biased toward one point of view or interest.'" *Barr*, 496 F. Supp. 3d at 135 (cleaned up) (quoting *Pub. Citizen v. Nat'l*

*Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 423 (D.C. Cir. 1989) (Friedman, J., concurring in the judgment)).

Once again, the Defendants faltered out of the gate by flouting FACA's procedural requirements, failing to include any provision to ensure that the Council will not be inappropriately influenced by the appointing authority. *See NAACP Legal Def. & Educ. Fund, Inc. v. Wilkinson*, No. 20-1132, 2021 WL 723993, *7 (D.D.C. Feb. 24, 2021) (granting summary judgment, issuing a declaratory judgment, and ordering defendants to amend the disclaimer to the committee's report to reflect their failure to comply with section 5(b)(3) because a provision ensuring that the committee would not inappropriately be influenced by the appointing authority was absent). More, given the Defendants' failure to comply with FACA and the Council's obvious political leanings, it appears likely that the Council *is* subject to improper influence. But the Defendants' procedural fault is alone sufficient to show another FACA violation.

### 4.  The Council does not have a Designated Federal Officer.

FACA also requires that Defendant Cardona, as head of the agency to which the Council reports, "designate a Federal officer . . . to be the [Designated Federal Officer ("DFO")]" for the Council. 41 C.F.R. § 102-3.120. Absent a DFO, the Council cannot meet. 5 U.S.C. app. 2 § 10(e); *id.* § 10(f) ("Advisory committees shall not hold any meetings except at the call of, or with the advance approval of, a [DFO], and in the case of advisory committees . . ., with an agenda approved by such officer or employee."). The DFO requirement "ensures that regulators and the public can obtain information about committees' operations." *Barr*, 496 F. Supp. 3d at 128.

Defendant Cardona has apparently failed to assign a DFO for the Council. No DFO evidently exists to call a meeting or approve an agenda, yet the Council "meets." Mills Decl. Ex. 2. The Defendants' apparent failure to appoint a DFO violates FACA, and the Plaintiffs are entitled to relief. *See Barr*, 496 F. Supp. 3d at 128 ("[Plaintiff] is . . . entitled to injunctive relief requiring defendant . . . to appoint a designated federal officer.").

## 5. The Council has violated FACA by failing to disclose required information.

FACA requires advisory committees to comply with several transparency and public access requirements. *First*, "[e]ach advisory committee meeting shall be open to the public." 5 U.S.C. app. 2 § 10(a)(1). *Second*, "timely notice of each such meeting shall be published in the Federal Register, and the Administrator shall prescribe regulations to provide for other types of public notice to insure that all interested persons are notified of such meeting prior thereto." *Id.* § 10(a)(2). To satisfy this requirement, committees must publish notice in the Federal Register at least 15 days before the meeting, and include (1) the name of the advisory committee; (2) the time, date, and place of the meeting; (3) a summary of the agenda and topics to be discussed; (4) a statement of whether any parts of the meeting will be closed, along with an explanation for that closure; and (5) contact information for a designated officer for those who wish to learn more information. 41 C.F.R. § 102-3.150(a). *Third*, "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or

20

by each advisory committee shall be available for public inspection and copying . . . until the advisory committee ceases to exist." 5 U.S.C. app. 2 § 10(b).

Though the Council has said that it is meeting, no such meeting was announced or open to the public, nor did any Defendant apparently provide timely notice of the meetings in the Federal Register or anywhere else. Further, to the Plaintiffs' knowledge, the Defendants have failed to make the records, reports, and other necessary documents pertaining to any meetings publicly available. Thus, the Defendants have violated FACA and continue to do so.

### C. The Plaintiffs are likely to succeed on their APA, declaratory relief, and mandamus claims.

The only remaining question is whether the Defendants' FACA violations can be remedied here. They can. First, the Administrative Procedure Act "is an appropriate vehicle" for the claims here against the Department and Defendant Cardona in his official capacity as Secretary. *Barr*, 496 F. Supp. 3d at 144. The APA prohibits agencies from acting "without observance of procedure required by law," and acting in a manner that is "arbitrary, capricious," "or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (B), and (D). "The type of actions and inaction challenged here," including "holding meetings, refusing to disclose documents, [and] failure to comply with FACA's other procedural requirements, certainly fall within the broad category of 'agency power' Congress intended to include in [the APA's] definition of agency action." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 38 (D.D.C. 2002); *accord Judicial Watch, Inc. v. Dep't of Com.*, 736 F. Supp. 2d 24, 30–31 (D.D.C. 2010) (collecting cases showing that "a number of courts

have allowed plaintiffs to proceed with APA actions based on alleged FACA violations").

Thus, the Department and Defendant Cardona's FACA violations—particularly their failures to ensure that the membership of the Council is fairly balanced, 5 U.S.C. app. 2 § 5(b)(2), to appoint a DFO, *id.* § 10(e)–(f) and 41 C.F.R. § 102-3.120, to disclose the required information, 5 U.S.C. app. 2 § 10(a)–(b), and establishing the Council without publishing notice in the Federal Register, *id.* § 9(a)—constitute "final agency actions" that were taken in violation of law. *See* 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court are subject to judicial review."). "The decisions in question" "were not tentative or interlocutory." *Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d at 40. And "[t]he decisions to hold meetings without public access to the meetings" and with an imbalanced membership "had a legal consequence—the denial of the public's right of access to that information" and have representative voices on the Council. *Id.* As shown above, the Defendants' actions have contradicted FACA's requirements. Thus, the Plaintiffs are likely to succeed on their APA claim.

Next, under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Because the Plaintiffs have "a judicially remediable right to have the [Council] comply with its duties under FACA," they are "entitled to a declaratory judgment that the [Council] is an advisory committee subject to the requirements of FACA, and that [D]efendants have violated FACA." *Barr*, 496 F. Supp. 3d at 146.

Moreover, "mandamus relief is the appropriate vehicle" for claims against the Council. *Barr*, 496 F. Supp. 3d at 144–45; *accord Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 34 (D.D.C. 2011); *Dep't of Com.*, 736 F. Supp. 2d at 31; *Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d at 41–44. "The party seeking mandamus has the burden of showing '(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists.'" *Barr*, 496 F. Supp. 3d at 145 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). The Plaintiffs are likely to meet all three requirements. As shown, the Defendants have a clear "duty to comply with FACA and ha[ve] failed to do so." *Id.* And "[m]andamus is the only vehicle for [the Plaintiffs'] claims against" the Council because "an advisory committee is not an agency subject to the APA and FACA provides no private right of action." *Id.* The Plaintiffs are likely to succeed on the merits.

Finally, the Plaintiffs have standing. The Defendants' array of FACA violations injures the Plaintiffs by denying them the information and representation that is guaranteed by FACA, and also by forcing the Plaintiffs to divert resources from their normal operations in order to respond to the Defendants' violations. *See* Zadrozny Decl. ¶¶ 5–6; Prior Decl. ¶¶ 5–9; Neily Decl. ¶¶ 8–15. These harms are more than sufficient to establish injury in fact. *See Barr*, 496 F. Supp. 3d at 127–132 (holding that a similarly situated plaintiff had standing over nearly identical claims). And these injuries are traceable to the Defendants' conduct and are likely to be

redressed by a favorable decision from this Court. *Id.* at 130 ("[Plaintiff's] injuries are redressable by mandamus and injunctive relief.").

## II.   The remaining factors weigh in favor of a preliminary injunction.

The other preliminary injunction factors also support injunctive relief.

***Irreparable Harm.*** The Plaintiffs face irreparable harm absent an injunction. Should the Council continue its meetings, "plaintiffs will be denied, perhaps for all time, but at a minimum during the on-going course, that which Congress expressly protected through FACA." *Pub. Citizen v. Nat'l Econ. Comm'n*, 703 F. Supp. 113, 129 (D.D.C. 1989) (granting an injunction). "The right to view the advisory committee's discussion of policy matters in public and the right to confront, through observation, the decision-making process as it occurs, will be obviated." *Id.*; *see also Ala.-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1106 (11th Cir. 1994) ("If public commentary is limited to retrospective scrutiny, [FACA] is rendered meaningless.").

Likewise irreparably harmed will be the Plaintiffs' right to have a representative voice on the Council. As the D.C. Circuit has explained, "[a]dvisory committees are not just mechanisms for transmitting policy advice on a particular subject matter to the government. These committees also possess a kind of political legitimacy as representative bodies." *Ass'n of Am. Physicians & Surgeons*, 997 F.2d at 913. "Membership on a committee is often highly prized and sought after because it carries recognition and even prestige." *Id.* And "[w]hen the executive branch endorses its advice and seeks to promote the policy course suggested by the committee, the executive branch draws upon the committee's political legitimacy."

*Id.*; *see also Cummock*, 180 F.3d at 292 ("[T]he Government obtains valuable advice and political legitimacy with respect to its policy decisions"). Permitting the Defendants' disregard of FACA to continue would thus triply harm the Plaintiffs: imposing informational and diversion-of-resources injuries on them, preventing them from having a voice on the Council, and forcing them to respond to an imbalanced government entity draped in undeserved legitimacy. *See Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 614 (D.C. Cir. 1996) ("[A]n injunction might be appropriate . . . if the unavailability of an injunctive remedy would effectively render FACA a nullity."); *W. Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1243–44 (D. Mont. 2019) (granting a use injunction because "[t]he agency had the obligation and opportunity to comply with FACA from the start" but "did not do so"); *Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868, 880 (D. Idaho 2009) (granting a use injunction "[b]ecause Plaintiffs were denied their right to participate in the Committees' processes"). A preliminary injunction is crucial to the Plaintiffs because "absent a preliminary injunction," the Plaintiffs will be precluded "from obtaining in a timely fashion information vital to the current and ongoing debate surrounding" K-12 education. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006); *see also Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (determining that the plaintiff faced irreparable harm "'because ongoing public and congressional debates about issues of vital importance cannot be restarted or wound back'" (cleaned up)).

**Balance of Equities and the Public Interest.** The balance of equities and public interest support relief. First, the Plaintiffs' "extremely high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest," for "[t]here is generally no public interest in the perpetuation of unlawful [executive] action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Second, FACA states the public interest, which is in line with "the essence of our democratic society": "providing the public its right to know how its government is conducting the public's business" (*Nat'l Econ. Comm'n*, 703 F. Supp. at 129) and to have a say. *See Pub. Citizen*, 491 U.S. at 453 ("FACA was enacted to cure specific ills, above all . . . biased proposals."); *see also* H.R. Rep. No. 92-1017, at 3496 (1972) ("One of the great dangers in this unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns."). Third, the public has an interest in preventing "agency decision makers" from relying on any recommendations or reports issued by an improperly constituted Council. *Cummock*, 180 F.3d at 293. Last, the Defendants suffer no cognizable harm from following the law. *See Nat'l Econ. Comm'n*, 703 F. Supp. at 129.

**Bond.** "[Federal Rule of Civil Procedure] 65(c) vests broad discretion in the district court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all." *Sutton Invs. LLC v. Perlmutter*, No. 1:21-cv-3226, 2021 WL 6062635, at *6 n. 4 (D.D.C. Dec. 22, 2021) (cleaned up). This Court has determined that bonds are not necessary where the defendants would not be

substantially injured by issuance of an injunction, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 81 (D.D.C. 2009), and only required a nominal bond where the public interest favored granting equitable relief, *Armstrong v. Bush*, 807 F. Supp. 816, 823 (D.D.C. 1992) ($100). Because the Defendants will not be harmed by being required to comply with FACA, and because the public interest strongly favors granting an injunction, this Court should waive any bond.

## CONCLUSION

For these reasons, the Court should grant a preliminary injunction enjoining Defendants Cardona, the Department, and the Council, and all of its working groups, from holding any meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Council, whether remotely or in person, until their violations of FACA are remedied. The Court should also enjoin the Defendants from submitting, accepting, publishing, employing, or relying upon any report or recommendations produced by the Council for any official purpose whatsoever, directly or indirectly, including indicating in any way that any report or recommendation of the Council reflects the views of a lawfully constituted advisory committee, until their violations of FACA are remedied.

Respectfully submitted,

/s/ J. Michael Connolly
J. Michael Connolly
Bar ID: 995815
Cameron T. Norris
Bar ID: VA083
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com

/s/ Christopher E. Mills
Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

/s/ Gene P. Hamilton
Gene P. Hamilton
D.C. Bar No. 1619548
AMERICA FIRST LEGAL FOUNDATION
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

July 14, 2022

28