# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION, *et al.*,

      Plaintiffs,

v.

MIGUEL CARDONA, in his official capacity as UNITED STATES SECRETARY OF EDUCATION, *et al*.,

      Defendant.

Civil Action No. 1:22-cv-01947-RCL

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

I. STATUTORY BACKGROUND ....................................................................................... 2

II. THE NATIONAL PARENTS AND FAMILIES ENGAGEMENT COUNCIL ................ 4

III. THIS SUIT ......................................................................................................................... 6

LEGAL STANDARDS .............................................................................................................. 7

ARGUMENT .............................................................................................................................. 8

I. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR
CLAIMS BECAUSE THE COUNCIL IS NOT AN ADVISORY COMMITTEE
SUBJECT TO FACA ......................................................................................................... 8

    A. THE COUNCIL DOES NOT HAVE AN ORGANIZED STRUCTURE. ............. 9

    B. THE COUNCIL DOES NOT PROVIDE GROUP ADVICE AND
        RECOMMENDATIONS. ........................................................................................ 11

    C. THE COUNCIL DOES NOT HAVE A FIXED MEMBERSHIP ........................ 15

    D. THE COUNCIL HAS GENERALIZED OBJECTIVES RATHER THAN
        A SPECIFIC PURPOSE. ........................................................................................ 16

    E. BECAUSE DEFENDANTS HAVE NOT VIOLATED FACA,
        PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR APA,
        MANDAMUS, AND DECLARATORY RELIEF CLAIMS. .............................. 17

II. PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM. ..................................... 18

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST DO NOT
SUPPORT THE ISSUANCE OF A PRELIMINARY INJUNCTION. ............................ 22

CONCLUSION ......................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aamer v. Obama,*
   742 F.3d 1023 (D.C. Cir. 2014) ............................................................................... 8

*Allied Chemical Corporation v. Daiflon, Inc.,*
   449 U.S. 33 (1980) .................................................................................................. 18

*American Society of Dermatology v. Shalala,*
   962 F. Supp. 141 (D.D.C. 1996), *aff'd without op.,* 116 F.3d 941 (D.C. Cir. 1997) ............... 12

*\*Association of American Physicians and Surgeons, Inc. v. Clinton,*
   997 F.2d 898 (D.C. Cir. 1993) ..................................................................... *passim*

*Baptist Memorial Hospital v. Sebelius,*
   603 F.3d 57 (D.C. Cir. 2010) .................................................................................. 18

*Byrd v. United States EPA,*
   174 F.3d 239 (D.C. Cir. 1999) ................................................................................ 20

*California Association of Private Postsecondary Schools v. Devos,*
   344 F. Supp. 3d 158 (D.D.C. 2018) ................................................................. 18, 21

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................ 18

*Citizens for Responsibility and Ethics in Washington v. Leavitt,*
   577 F. Supp. 2d 427 (D.D.C. 2008) ....................................................................... 12

*Citizens for Responsibility and Ethics in Washington v. SEC,*
   916 F. Supp. 2d 141 (D.D.C. 2013) ....................................................................... 18

*Davis v. Pension Benefit Guaranty Corporation,*
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................................... 7

*District of Columbia v. United States Department of Agriculture,*
   444 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................... 19

*Electronic Privacy Information Center v. Drone Advisory Committee,*
   995 F.3d 993 (D.C. Cir. 2021) ................................................................................ 13

*\*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ................................................................................ 19

*Fort Sill Apache Tribe v. National Indian Gaming Commission,*
   103 F. Supp. 3d 113 (D.D.C. 2015) ....................................................................... 18

*Freedom Watch, Inc. v. Obama*,
807 F. Supp. 2d 28 (D.D.C. 2011) ......................................................................................... 17

*Freedom Watch, Inc. v. Obama*,
930 F. Supp. 2d 98 (D.D.C. 2013) ......................................................................................... 12

*Gulf Oil Corporation v. Department of Energy*,
514 F. Supp. 1019 (D.D.C. 1981) .......................................................................................... 21

*\*Heartwood, Inc. v. United States Forest Service*,
431 F. Supp. 2d 28 (D.D.C. 2006) .................................................................................. 10, 14

*Idaho Wool Growers Association v. Schafer*,
637 F. Supp. 2d 868 (D. Idaho 2009) ................................................................................... 17

*In re Navy Chaplaincy*,
534 F.3d 756 (D.C. Cir. 2008) .............................................................................................. 18

*In re Navy Chaplaincy*,
738 F.3d 425 (D.C. Cir. 2013) ................................................................................................ 8

*Judicial Watch, Inc. v. National Energy Policy Development Group*,
219 F. Supp. 2d 20 (D.D.C. 2002) ........................................................................................ 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................................. 20

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ................................................................................................................ 7

*Munaf v. Geren*,
553 U.S. 674 (2008) ................................................................................................................ 7

*Northern States Power Company v. United States Department of Energy*,
128 F.3d 754 (D.C. Cir. 1997) .............................................................................................. 18

*\*Nader v. Baroody*,
396 F. Supp. 1231 (D.D.C. 1975) .............................................................................. 10, 11, 12

*National Anti-Hunger Coalition v. Executive Committee of President's Private Sector Survey on Cost Control*,
557 F. Supp. 524 (D.D.C. 1983), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983) ............................... 14

*Nken v. Holder*,
556 U.S. 418 (2009) .............................................................................................................. 22

*Power Mobility Coalition v. Leavitt*,
404 F. Supp. 2d 190 (D.D.C. 2005) ...................................................................................... 19

*Public Citizen v. United States Department of Justice,*
   491 U.S. 440 (1989)............................................................................................... 2, 8

*\*Public Employees for Environmental Responsibility v. National Park Service,*
   --- F. Supp. 3d ---, 2022 WL 1657013 (D.D.C. May 24, 2022) ........................ *passim*

*Save Jobs USA v. United States Department of Homeland Security,*
   105 F. Supp. 3d 108 (D.D.C. 2015) ......................................................................... 19

*Sherley v. Sebelius,*
   644 F.3d 388 (D.C. Cir. 2011) ................................................................................... 7

*Singh v. Carter,*
   185 F. Supp. 3d 11 (D.D.C. 2016) ............................................................................. 8

*\*VoteVets Action Fund v. United States Department of Veterans Affairs,*
   992 F.3d 1097 (D.C. Cir. 2021) ............................................................... 9, 10, 16, 22

*\*Winter v. Natural. Resources Defense Council, Inc.,*
   555 U.S. 7 (2008)................................................................................... 2, 7, 8, 22

*Wisconsin Gas Company v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ................................................................................. 19

*\*Young v. United States EPA,*
   No. 21-2623 (TJK), 2022 WL 474145 (D.D.C. Feb. 16, 2022) ......................... 8, 21

**STATUTES**

5 U.S.C. app. 2 ........................................................................................................... 1

5 U.S.C. app. 2 §§ 1–16 .............................................................................................. 2

5 U.S.C. app. 2 § 2 ...................................................................................................... 2

5 U.S.C. app. 2 § 3 ................................................................................................... 3, 9

5 U.S.C. app. 2 § 5 ................................................................................................... 3, 6

5 U.S.C. app. 2 § 9 ................................................................................................... 3, 7

5 U.S.C. app. 2 § 10 ............................................................................................. 3, 4, 7

5 U.S.C. § 551 *et seq*................................................................................................. 16

5 U.S.C. § 552............................................................................................................ 21

5 U.S.C. § 706............................................................................................................ 17

**REGULATIONS**

41 C.F.R. pt. 102-3 ................................................................................................................. 4

**OTHER**

What We Do, America First Legal Foundation, https://www.aflegal.org/about (last visited July
   26, 2022) ................................................................................................................................ 5

## INTRODUCTION

In June 2022, the United States Department of Education (the "Department") created a "National Parents and Families Engagement Council" (the "Council") to "help[] facilitate strong and effective relationships between schools and parents, families, and caregivers to help ensure that students are recovering from the pandemic and will thrive in the future."  Declaration of Hayley Meadvin, Senior Advisor, United States Department of Education ¶ 4 ("Meadvin Decl."). The Council consists of a variable number of individual representative parents, family members, or caregivers from nationwide organizations who are expected to "individually share information regarding how their children are recovering from the pandemic," the different ways that schools in their area are supporting students as they recover from the pandemic and in general, and "their views on how parents, family members, and caregivers can generally best constructively engage with schools."  *Id.* ¶ 10.

Based on nothing but the Department's announcement of the formation of this Council and a single additional press release, Plaintiffs allege that the Council is an advisory committee governed by the Federal Advisory Committee Act, 5 U.S.C. app. 2 ("FACA"), and now seek a preliminary injunction to prevent the Council from meeting or conducting any of its pressing official business.  But FACA applies only when a committee is established or utilized to provide collective advice, not in every instance where a government agency seeks input from stakeholders. As explained in the declaration submitted herewith, the Council is not an advisory committee within the meaning of FACA because it does not possess any of the necessary, formal attributes that would subject it to the requirements of FACA—it does not have any formal organizational or leadership structure, it was not created or expected to provide collective advice or recommendations, it lacks a specific purpose, and its membership is not fixed.

Accordingly, Plaintiffs are not entitled to the "extraordinary remedy" of preliminary injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In addition to failing to demonstrate that they are likely to succeed on the merits of their claims that Defendants have violated FACA, Plaintiffs have also failed to show that their claims regarding diversion of resources, inability to participate in the Council, loss of timely information, or FOIA costs rise to the level of imminent, irreparable injury. Notably, the activities Plaintiffs state they will engage in are consistent with their missions and they have not shown that they will expend resources or incur unrecoverable Freedom of Information Act costs in a way that will impair a core function or subject them to abnormal operational costs. Parents Defending Education's claims of participational or informational injury are premature, as it may well be eligible for (and ultimately selected for) the Council in enough time to make the first meeting. The other two plaintiffs do not appear to be eligible for the Council, but any alleged injuries would be fully redressed through the normal course of litigation. Finally, the balance of the equities and the public interest favor allowing the Council to commence its work and denying the requested injunction, so that the Department can obtain the benefits of the information it expects to gather from the Council as soon as possible.

## BACKGROUND

### I.   STATUTORY BACKGROUND

Congress enacted FACA, 5 U.S.C. app. 2 §§ 1–16, to reduce the growing cost of unnecessary blue ribbon commissions, advisory panels, and honorary boards set up by the government to advise the President and federal agencies. The statute seeks to eliminate committees that have outgrown their usefulness and impose uniform procedures on those that are indispensable. *See* 5 U.S.C. app. 2 § 2(b). *See generally Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989).

FACA only applies to "advisory committees," however, and it defines such committees as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof" that is "established" by statute, or "established or utilized" by the President or by one or more agencies, "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  5 U.S.C. app. 2 § 3(2).  Excluded from FACA is "any committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government" and any committee created by the National Academy of Sciences or the National Academy of Public Administration.  *Id*. § 3(2)(i), (ii).  The establishment of an "advisory committee" must be

> specifically authorized by statute or by the President; or . . . determined as a matter of formal record, by the head of the agency involved after consultation with the Administrator, with timely notice published in the Federal Register, to be in the public interest in connection with the performance of duties imposed on that agency by law.

*Id*. § 9(a).

FACA imposes an array of requirements on the creation and operation of advisory committees.  An "advisory committee" must be "fairly balanced in terms of the points of view represented and the functions to be performed," 5 U.S.C. app. 2 § 5(b)(2), and "not be inappropriately influenced by the appointing authority or by any special interest," *id*. § 5(b)(3).  An advisory committee cannot meet or take any action until a detailed charter is filed with the head of the agency to which it reports (or the Administrator of the General Services Administration in the case of a committee reporting to the President) and with the House and Senate committees having legislative jurisdiction over the agency.  *Id*. § 9(c).  Each committee must give advance notice in the Federal Register of any meeting, *id*. § 10(a)(2), hold all meetings open to the public, *id*. § 10(a)(1), keep detailed minutes of each meeting and copies of all reports received, issued, or approved by the advisory committee, *id*. § 10(c), and make certain records available to the public

3

for inspection and coping at a single location, *id.* § 10(b).  FACA advisory committees are further subject to regulations promulgated by the General Services Administration.  *See* 41 C.F.R. pt. 102-3.

## II.  THE NATIONAL PARENTS AND FAMILIES ENGAGEMENT COUNCIL

In June 2022, the Department established the National Parents and Families Engagement Council "to help facilitate strong and effective relationships between schools and parents, families, and caregivers to help ensure that students are recovering from the pandemic and will thrive in the future."  Meadvin Decl. ¶ 4.  The Department intended the Council to reflect the diversity of the country and its schools.  *Id.* ¶ 5.  Accordingly, the Department selected a variety of organizations to participate in the Council based on a pre-established specific set of objective criteria.  *Id.* ¶ 6. Specifically, each participating organization was required to:

    a.    Have a national chapter that sets policy agendas and priorities;

    b.    Oversee local and/or regional chapters that meet regularly with local stakeholders;

    c.    Have a direct relationship to parents, families, caregivers, and the school community(s);

    d.    Be focused on helping foster productive conversations between parents, families, caregivers, and schools related to recovering from the pandemic; and

    e.    Be committed to helping create strategic engagements between parents, families, caregivers, and schools that will help students thrive.

*Id.*

Using the above criteria, the Department initially selected fourteen organizations to participate in the Council.  Meadvin Decl. ¶ 7.  Subsequently, two additional organizations joined. *Id.*  The current participating organizations are:  The Council of Parent Attorneys and Advocates; Fathers Incorporated; Generations United; Girls, Inc.; League of United Latin American Citizens;

Mocha Moms; National Association for Family, School, and Community Engagement; National Action Network; National Military Family Association; National Parent Teacher Association; National Parents Union; The National Center for Parent Leadership, Advocacy, and Community Empowerment; United Parent Leaders Action Network; UnidosUS; The National Association for the Advancement of Colored People; and Jack and Jill of America. *Id.* ¶ 5. Interested organizations meeting the criteria above can request to join the Council at any point prior to the first Council meeting. *Id.* ¶ 7. To the extent that Plaintiff Parents Defending Education believes it may be eligible, the Department indicates that it may request to join. *Id.* (The other Plaintiffs, a legal action corporation (America First Legal Foundation) and a political action committee (Fight for Schools and Families) do not appear to be eligible. *Id.*; *see* Compl. ¶¶ 13–14, ECF No. 1; What We Do, America First Legal Foundation, https://www.aflegal.org/about (last visited July 26, 2022).)

Each participating organization, in turn, has selected one or two parents, family members, or caregivers to participate in the Council, who must be actively engaged in the community, have at least one school-aged student, and not be on the national board or executive committee of the respective organizations he or she represents. Meadvin Decl. ¶ 9. At meetings of the Council, these representatives will "individually share information regarding how their children are recovering from the pandemic," the different ways that schools in their area are supporting students as they recover from the pandemic and in general, and "their views on how parents, family members, and caregivers can generally best constructively engage with schools." *Id.* ¶ 10. The Department emphasizes that it "will only solicit the individual input of each Council member on these topics." *Id.* The Department also intends to conduct outreach to the Council, making resources available to the Council representatives to "disseminate to their respective organizations and directly to other parents, family members, and caregivers" and providing webinars to

individual members of the Council, in addition to other members of the public, to "assist parents, family members, and caregivers in becoming better advocates for their children in school." *Id.*

The Department "has not authorized the Council to make recommendations of any form and does not intend to solicit consensus advice or recommendations from the Council." Meadvin Decl. ¶ 13. "Moreover, the Department has not created or approved, nor does it intend to create or approve, any process through which the members of the Council could arrive at or vote on group consensus advice or recommendations," and the Council is not required and will not be requested to submit any report or other type of work product. *Id.* Nor has the Department "created or approved any formal organizational or leadership structure within the Council, and the Department has not directed or suggested that the Council form any subgroups or working groups, and is not aware of any being formed." *Id.* ¶ 14.

"To date, the Department has not convened any meetings of the Council, and there is currently no set schedule of planned meetings." Meadvin Decl. ¶ 11. The Department has also "not provided funding or workspace to the Council." *Id.* ¶ 12.

## III.    THIS SUIT

Plaintiffs are three organizations focused on government transparency and educational issues. Pls.' Mem. in Supp. of Appl. Prelim. Inj. at 7, ECF No. 3-1 ("Pls.' Mem."); Compl. ¶¶ 13–15. They filed this suit on July 6, 2022, contending that the Department violated FACA by forming and running the Council. Plaintiffs specifically contend that the Department violated the requirements: (1) that an advisory committee's membership be "fairly balanced" and that "appropriate provisions" be made "to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced," 5 U.S.C. app. 2 § 5(b)(2), (3); *see* Compl. ¶¶ 5, 68–69, 86–93; (2) that meetings be timely noticed in the Federal Register and open to the public and that certain Council documents be made available for public inspection, 5 U.S.C. app. 2

6

§ 10(a), (b); *see* Compl. ¶¶ 6, 74–75, 108–19; (3) that establishment of the Council be authorized by statute or the President, or by publication in the Federal Register, 5 U.S.C. app. 2 § 9(a); *see* Compl. ¶¶ 7, 76–77, 82–85; and that a charter be filed with the necessary political bodies and that a Designated Federal Officer be assigned to the Council, 5 U.S.C. app. 2 §§ 9(c), 10(e); *see* Compl. ¶¶ 8, 70–73, 94–107.   Plaintiffs assert that these violations of FACA create violations of the Administrative Procedure Act ("APA").   Compl. ¶¶ 66–81.   Plaintiffs further seek to maintain this action pursuant to the Mandamus Act and the Declaratory Judgment Act.   *Id.* ¶¶ 82–119, 120–31.

On July 14, 2022, Plaintiffs filed the present "application for preliminary injunction," seeking to enjoin Defendants from "holding any meetings, sessions, or hearings, or conducting any official business whatsoever on behalf of the Council" and "from submitting, accepting, publishing, employing, or relying upon any report or recommendations produced by the Council for any official purpose whatsoever," pending resolution of this suit.   Pls.' Appl. Prelim. Inj. at 1, ECF No. 3.

## LEGAL STANDARDS

"A preliminary injunction is an 'extraordinary and drastic remedy.'"   *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted).   It is "never awarded as of right," *id*. at 690, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Davis v. Pension Benefit Guar. Corp*., 571 F.3d 1288, 1292 (D.C. Cir. 2009).   The movant must satisfy each part of a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."   *Winter*, 555 U.S. at 20; *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).   The "most important factor" is whether the movant has "established a

likelihood of success on the merits," *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).[1]  As discussed below, Plaintiffs have failed to make the requisite showing as to any of the required prongs.

## ARGUMENT

### I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS BECAUSE THE COUNCIL IS NOT AN ADVISORY COMMITTEE SUBJECT TO FACA.

Because the Council is not a FACA advisory committee, Plaintiffs are unlikely to succeed on their claims that the Department has violated the statute's requirements.  FACA defines an advisory committee as a "committee, board, commission, council, conference, panel, task force, or other similar group, . . . which is . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  5 U.S.C. app. 2 § 3(2)(C).  "That definition has been interpreted narrowly."  *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, --- F. Supp. 3d ---, 2022 WL 1657013, at *15 (D.D.C. May 24, 2022) (citation omitted).  FACA was "[not] intended to cover every formal and informal consultation between the President or an Executive agency and a group rendering advice."  *Pub. Citizen*, 491 U.S. at 453.  Rather, this Circuit has determined that, to be a FACA advisory committee, a group must have 1) "an organized structure," 2) "a fixed membership," and 3) "a specific purpose."  *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*,

---

[1]  "The D.C. Circuit has, in the past, followed the 'sliding scale' approach to evaluating preliminary injunctions . . . . The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter*."  *Singh v. Carter*, 185 F. Supp. 3d 11, 16–17 (D.D.C. 2016) (citing *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013), for the proposition that all four prongs of the preliminary injunction standard must be met before injunctive relief can be granted); *see also Young v. U.S. EPA*, No. 21-2623 (TJK), 2022 WL 474145, at *3 (D.D.C. Feb. 16, 2022) ("[A]fter *Winter*, the Circuit has suggested . . . that a plaintiff must independently establish both likelihood of success on the merits and irreparable harm.").  In any event, regardless of which standard is applied, preliminary injunctive relief is inappropriate here.

997 F.2d 898, 914 (D.C. Cir. 1993); *see also VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1103 (D.C. Cir. 2021) (same).  Additionally, a group must be "established or utilized" by the federal government to provide "advice or recommendations."  5 U.S.C. app. 2 § 3(2).  Given these criteria, "it is a rare case when a court holds that a particular group is a FACA advisory committee over the objection of the executive branch."  *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 914.

The Council does not meet the FACA criteria because it does not have an organized structure, make final group recommendations, have a fixed membership, or have a specific purpose.  Plaintiffs' FACA claim is therefore likely to fail.  And because their APA, Mandamus Act, and Declaratory Judgment Act claims are all predicated on establishing that Defendants violated FACA, those claims, too, are likely to fail.

### A.  THE COUNCIL DOES NOT HAVE AN ORGANIZED STRUCTURE.

"[A]n important factor in determining the presence of an advisory committee becomes the formality and structure of the group."  *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 914. And "[s]ince form is a factor, it would appear that the government has a good deal of control over whether a group constitutes a FACA advisory committee."  *Id.*  An "unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with each other . . . does not trigger FACA."  *Id.* at 915.

Here, the Department created a group that lacks the formality and structure of a FACA advisory committee.  "The Department has not created or approved any formal organizational or leadership structure within the Council, and the Department has not directed or suggested that the Council form any subgroups working groups, and is not aware of any being formed."  Meadvin Decl. ¶ 14.  The Department publicly explained that

> [t]he Council will be a channel for parents and families to
> constructively participate in their children's education by helping

> them understand the rights they have, create a feedback loop with
> schools to shape how American Rescue Plan (ARP) funds are
> deployed to meet students' needs, and identify summer learning and
> enrichment opportunities for children in their communities.

Declaration of Christopher Mills, Ex. 1, ECF No. 3-2 at 12 ("June 14 Press Release").  Indeed, the

Council is the exact type of group that exists to gather information at the local level from a

collection of "diverse parent voices . . . to inform the Department's policies and programs," *id.* at

12–13, that is the hallmark of effective agency policymaking—not a wasteful government practice

to be discouraged.  *See Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 35 (D.D.C. 2006)

(Where "the President or an agency seeks to 'provide[ ] a mechanism and sounding board to test

the pulse of the country by conferring directly or indirectly with . . . widely disparate special

interest groups' and encourage an 'exchange of views,' the resulting meetings are not subjected to

the requirements of the FACA." (quoting *Nader v. Baroody*, 396 F. Supp. 1231, 1232, 1234

(D.D.C. 1975))).

    The informality and lack of structure of the Council stand in stark contrast to cases in this

circuit, in which courts have found groups to be FACA advisory committees, including the sole

case on which Plaintiffs rely.  In *VoteVets Action Fund*, the only case Plaintiffs cite in their briefing

on this point, the plaintiffs' complaint alleged the committee members "worked intensively as a

group, including through in-person meetings, emails, and phone calls" and that both the members

and the agency "repeatedly described themselves as a 'group' or 'team,'" and "unit."  992 F.3d at

1104–05.  Moreover, the "members consulted one another in advising the Department, jointly

offering their recommendations."  *Id*. at 1105.  Here, Plaintiffs' complaint contains no such

allegations.  The Council has never met since it was formed and does not have any set meeting

dates.  Meadvin Decl. ¶ 11.  It is not intended to work so much as a team as a collection of "diverse

parent voices," June 14 Press Release, ECF No. 3-2 at 12–13, that will "individually share

information regarding how their children are recovering from the pandemic" and on other topics, Meadvin Decl. ¶ 10.

As Ms. Meadvin's declaration establishes, the Council does not have the hallmark characteristics of formality and structure necessary for this Court to find that it is a FACA advisory committee, and Plaintiffs are therefore unlikely to succeed on the merits.  Groups found to be FACA advisory committees are significantly different from the Council.  *See. e,g,. Pub. Emps. for Env't Resp.*, 2022 WL 1657013, at *15–16 ("The E-bike Group functioned as a collective unit . . . [through] the kind of close collaboration and teamwork that suggests the existence of an advisory committee" where "[m]eetings were held quarterly, with in-person and dial-in options, agendas circulated in advance, and minutes and action items circulated afterwards.").

### B. THE COUNCIL DOES NOT PROVIDE GROUP ADVICE AND RECOMMENDATIONS.

"Even more than the structure of the committee, the most important inquiry for FACA purposes is whether it 'is asked to render advice or recommendations, *as a group*, and not as a collection of individuals.'"  *Pub. Emps. for Env't Resp.*, 2022 WL 1657013, at *16 (quoting *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 913).  "Examination of [FACA] as a whole, and the indications found there, confirms the legislative history, and points to the conclusion that Congress was concerned with advisory committees formally organized which the President or an executive department or official directed to make recommendations on an identified governmental policy for which specified advice was being sought."  *Nader*, 396 F. Supp. at 1234.  The Council here fails to meet this standard because it neither works as a group—as opposed to a collection of individuals—nor provides any formal advice or recommendations to the Department.

*First*, the Council is a collection of individuals from whom the Department is interested in gathering information regarding families' experiences in education at the local level; the Council does not function as a unified group.  The Council is designed to solicit individual views on a

broad range of topics.  The individuals attending these meetings may vary from school year-to-school year, and the Department does not plan to obtain collective advice or collaborative work product from the stakeholder meetings.  Rather, "[t]he Department will only solicit the individual input of each Council member."  Meadvin Decl. ¶ 10; *see also Freedom Watch, Inc. v. Obama*, 930 F. Supp. 2d 98, 100–03 (D.D.C. 2013) (holding that stakeholder meetings on health reform legislation were not meetings of an advisory committee subject to FACA); *Citizens for Resp. & Ethics in Wash. v. Leavitt*, 577 F. Supp. 2d 427, 432–33 (D.D.C. 2008) (holding that meetings organized by Department of Health and Human Services with a group of private individuals regarding the Office of Head Start's performance standards were not subject to FACA; alleged group had no formal organizational structure and attendees conveyed their own opinions and did not render collective advice); *Am. Soc'y of Dermatology v. Shalala*, 962 F. Supp. 141, 148 (D.D.C. 1996) (holding that multispecialty physician panels established by Health Care Financing Administration were not subject to FACA where individual panelists gave their input rather than the panel attempting to reach consensus as a group), *aff'd without op.*, 116 F.3d 941 (D.C. Cir. 1997) (table); *Nader*, 396 F. Supp. at 1234 (holding that meetings between an assistant to the President and various Executive Branch officials and special interest or industry groups, held for the purposes of exchanging views, did not constitute an advisory committee under FACA).  In fact, "[t]he Department has not and does not intend to solicit consensus advice or recommendations from the Council."  Meadvin Decl. ¶ 13.

Plaintiffs' claim that the Council, "[a]s a unit . . . meets and works with the Department to achieve its goals," Pls.' Mem. at 12, is not borne out by the record before the Court.  As the Department has explained, the Council is not intended to act as a unit, but rather as an assembled group of individual organizations that "will meet so that all representatives can individually share information" with the Department.  Meadvin Decl. ¶ 10.  Plaintiffs also selectively quote a

Department press release to suggest, inaccurately, that Council members are expected to "work together" as a team.  Pls.' Mem. at 12 (citation omitted).  In fact, the press release that Plaintiffs rely on is in accord.  It states that the Council "will help foster a collaborative environment where *we* can work together to serve the best interest of students," where the "we" refers generally to the Council, the Department, and, as well, parents, relatives, caregivers, and schools more globally. June 14 Press Release, ECF No. 3-2 at 12 (emphasis added).  Moreover, the press release explains that the Council "will work with the Department to identify constructive ways to help families engage at the local level" and "provides the opportunity to bring diverse parent voices together to inform the Department's policies and programs."  June 14 Press Release, ECF No. 3-2 at 12–13, *see also* Declaration of Christopher Mills, Ex. 2, ECF No. 3-2 at 16–19.  But it nowhere suggests that will be done as a group as opposed to as individuals.  Nor does the Department and the Council's holding of "listening sessions with parents, families, principals, educators, and school community members to better understand the needs of students," June 14 Press Release, ECF No. 3-2 at 13, indicate anything more than the receipt of information from Council members as individuals.

*Second*, the Council does not transmit any formal recommendations to the Department. "[W]hat matters under [precedent in the D.C. Circuit] is whether the []group transmits any recommendations directly to the agency."  *Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 995 F.3d 993, 1002 (D.C. Cir. 2021).  In order for a group to implicate FACA, it "must therefore both provide advice on matters of executive policymaking, *and* it must provide them to the agency." *Pub. Emps. for Env't Resp.*, 2022 WL 1657013, at *16 (emphasis added).

Here, the Council is not tasked with making any specific recommendations as to policies or regulations or anything else.  The purpose of the Council is for its representatives to "individually share information" regarding a variety of issues impacting childhood education.

Meadvin Decl. ¶ 10.  Moreover, the Department has not created or approved, nor does it intend to create or approve, any process through which the members of the Council could arrive at or vote on consensus advice or recommendations, and the Council is not tasked with producing any report or other work product.  *Id.* ¶ 13.  And the Council has been designed not only to gather information from stakeholders but also to provide it to them.  "[T]he Department will provide the Council with resources, such as fact sheets and toolkits, on topics such as how American Rescue Plan funds can be utilized and how to productively engage with schools, which the representatives on the Council can disseminate to their respective organizations and directly to other parents, family members, and caregivers."  *Id.* ¶ 10.  This two-way flow of information is one of the hallmarks of a body that does not come under the purview of FACA.  *See Heartwood, Inc.*, 431 F. Supp. 2d at 35–36 (holding that a committee fell under FACA in part because it involved "a one-way transfer of information").

The Department, of course, cannot prevent individual Council members from sharing their information and ideas with other members of the Council.  But that possibility should not affect this Court's inquiry.  As the D.C. Circuit has observed, even task forces that were responsible for "gathering information, developing work plans, performing studies, drafting reports and even discussing preliminary findings with agency employees" were nevertheless not FACA advisory committees because they did not produce "final recommendations."  *Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983).  In *National Anti-Hunger Coalition*, the court found it particularly compelling that the group in question "lacked authority to do so."  *Id.* at 530.  The same is true here.  *See* Meadvin Decl. ¶ 13.

Because the Council neither functions as a unified whole nor provides formalized advice to the Department, it is not a FACA advisory committee.  Tellingly, while Plaintiffs acknowledge

14

these criteria of an advisory committee, *see* Pls.' Mem. at 12, they do not argue that the Council renders advice or recommendations.

### C.  THE COUNCIL DOES NOT HAVE A FIXED MEMBERSHIP.

To be a FACA advisory committee, a group must have "a fixed membership." *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 914.  On this point, Plaintiffs include a single, conclusory sentence in their motion, unsupported by the record, that "the Council is composed of a fixed group of 14 representatives." Pls.' Mem. at 12.  Actually, "[m]embership on the Council is not fixed, and interested organizations meeting the broad criteria above can request to join the Council at any point prior to the first Council meeting."  Meadvin Decl. ¶ 7.  In fact, the Department has specifically indicated that Plaintiff Parents Defending Education may request to join the Council.  *Id.*  But perhaps the clearest evidence that the Council's membership is fluid is that, even since the Department issued the press release on which Plaintiffs rely in their brief expounding on the "fixed group of 14," the Council that has been expanded to include two new members, bringing the total to 16.  *See id.* ¶ 7.  Moreover, the Department contemplates that membership on the Council will continue to change from one school year to another.  *Id.* ¶ 8.  And while the Department chooses what national parent and family organizations will be on the Council, it leaves it to each participating organization to designate specific representatives to the Council, subject to review, and those organizations may change their designated representatives at any time.  *Id.* ¶ 9; *see also* Pls.' Mem. at 4 (conceding that "[t]he Department has not specified the individuals from each group who will participate in Council matters").  The Council therefore does not have a fixed membership and is consequently not a FACA advisory committee for this reason, too.

### D. THE COUNCIL HAS GENERALIZED OBJECTIVES RATHER THAN A SPECIFIC PURPOSE.

To be a FACA advisory committee, a group must have "a specific purpose." *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 914. Although the meaning of this requirement is neither spelled out by the statute nor articulated by courts, a comparison of other cases shows that the facts Plaintiffs allege here fall far short of that standard. In *VoteVets Action Fund*, "[t]he Council [allegedly] had . . . 'a specific purpose' of advising the Department of Veterans Affairs on 'the essential decisions' relating to veterans' affairs" and members of the Council stated publicly that they "assist the Department of Veterans Affairs' leadership." 992 F.3d at 1104–05. And in *Public Employees for Environmental Responsibility*, "the E-bike Group had . . . a specific purpose, primarily 'promot[ing] interagency coordination on electric bicycle policies.'" 2022 WL 1657013, at *15 (citation omitted)).

In contrast, Plaintiffs here rely on a single press release to argue that the Council has a specific purpose because it is "tasked with 'facilitat[ing] strong and effective relationships between schools and parents, families, and caregivers.'" Pls.' Mem. at 12 (quoting Mills Decl., Ex. 1 at 12). That quote alone falls far short of the specific purpose courts in this circuit have required because, unlike the two advisory groups noted above, there is no connection to any particular agency policymaking or agency goal. "Facilitating relationships" bears no resemblance to advising on essential decisions or developing electric bicycle policy. Moreover, the quote on which Plaintiffs rely does not even fully capture the Department's vision for the Council. Explained more fully,

> [t]he Council will meet so that all representatives can individually share information regarding how their children are recovering from the pandemic, the different ways that schools in their area are providing academic, mental health and social and emotional support to students as they recover from the pandemic and in general, and their views on how parents, family members, and caregivers can generally best constructively engage with schools.

16

Meadvin Decl. ¶ 10.  In other words, the Council has a number of generalized objectives but plainly no specific purpose.

Because Plaintiffs are unlikely to meet their burden of showing that the Committee is organized and structured, provides recommendations as a group, has a fixed membership, and has a specific purpose, they are unlikely to be able to show that the Council is subject to FACA.  They are therefore unlikely to succeed on the merits of their FACA claim.

### E.  BECAUSE DEFENDANTS HAVE NOT VIOLATED FACA, PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR APA, MANDAMUS, AND DECLARATORY RELIEF CLAIMS.

FACA does not create a private right of action.  *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 30 (D.D.C. 2011).  Given this, plaintiffs alleging violations of FACA must seek judicial review through alternative statutory means, such as the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.  *See Jud. Watch v. Nat'l Energy Policy Dev. Gp.*, 219 F. Supp. 2d 20, 33–34 (D.D.C. 2013); *Idaho Wool Growers Ass'n v. Schafer*, 637 F. Supp. 2d 868, 872–73 (D. Idaho 2009) (permitting FACA plaintiffs to seek review under the Administrative Procedure Act).  Plaintiffs have brought their action under the APA (Count I).

The APA prevents agencies from acting "without observance of procedure required by law," or in a manner that is "arbitrary, capricious," "or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (B), (D).  The sole way in which Plaintiffs claim Defendants violated the APA is by violating FACA.  Pls.' Mem. at 21–22.  But because FACA does not apply to the Council for the reasons set forth above, Defendants did not violate FACA, and therefore they also did not violate the APA.  Similarly, Plaintiffs' claims for mandamus relief (Counts II–VI) and claim under the Declaratory Judgment Act (Count VII) are all dependent on them prevailing on the FACA issue.  *Id.* at 22–23.  But again, because Defendants did not violate FACA because the Council is

not an advisory committee as defined by that statute, Plaintiffs' Declaratory Judgement Act and mandamus claims must similarly fail.

Plaintiffs' claims for mandamus relief must fail for an independent reason, too.  A writ of mandamus is "a drastic [remedy], to be invoked only in extraordinary circumstances." *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980)).  Mandamus relief is appropriate only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem. Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010).  Because Plaintiffs have an adequate remedy through the APA, mandamus is not available here. *See Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 152 (D.D.C. 2013) ("The fact that Plaintiff's APA claim has failed in these circumstances does not prevent the APA from being an 'adequate means to attain relief' for mandamus purposes."); *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 120 n.6 (D.D.C. 2015) ("The Court need not reach the question of whether a writ of mandamus is available to compel NIGC to issue a decision since it finds it has APA jurisdiction over Count 1.").

## II.   PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM.

Plaintiffs' motion for a preliminary injunction should also be denied because Plaintiffs have not established that they will suffer irreparable injury absent preliminary relief. Demonstrating irreparable harm is a "non-negotiable hurdle[]." *Cal. Ass'n of Priv. Postsecondary Schs. v. Devos* (*CAPPS*), 344 F. Supp. 3d 158, 167 (D.D.C. 2018).  "A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (citation omitted).

"[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (internal quotation marks omitted). *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Critically, to meet this requirement, "[t]he movant must provide some evidence of irreparable harm." *Id.* "Bare allegations of what is likely to occur are of no value"; the movant must, instead, "substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas Co.*, 758 F.2d at 674.

Plaintiffs have failed to provide such evidence. The declarations submitted by Plaintiffs in support of their motion do not allude to irreparable injury in any way. Rather, the declarants focus on the three Plaintiff organizations' respective decisions to "devote extra resources to monitor and scrutinize the Council," Declaration of Ian Prior ¶ 8, ECF No. 3-4 ("Prior Decl."); *see also* Declaration of John Zadrozny ¶ 5, ECF No. 3-3 ("Zadrozny Decl."); Declaration of Nicole Neily ¶¶ 12–14, ECF No. 3-5 ("Neily Decl."). The declarants allege that this has forced their organizations to divert resources away from their "normal activities." Prior Decl. ¶ 9; *see also* Neily Decl. ¶ 13; Zadrozny Decl. ¶ 5. But Plaintiffs do not explain how any diversion of resources is more than simply a reallocation among priorities, much less show that they have been required to expend resources in a way that has impaired a core function or subjected them to "operational costs beyond those normally expended." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015) ("[A]n organization does not suffer an injury in fact where it 'expend[s] resources to educate its members and others' unless doing so subjects the organization to 'operational costs beyond those normally expended.'"); *cf. Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 41 (D.D.C. 2020) (finding that plaintiff, an educational group, had established irreparable

harm where it had shown that the challenged rule "would compel the expenditure of additional resources on non-educational services, including food assistance and 'medical and social work'" and would "perceptibly impair[]" its programs). Notably, Plaintiffs admit that their "normal" missions are to monitor and scrutinize government activities and/or developments in education. *See* Prior Decl. ¶ 8; Neily Decl. ¶¶ 3–7; Zadrozny Decl. ¶¶ 2–3. Plaintiffs do not explain how their activities with regard to the Council fall outside their normal respective missions so as to create irreparable injury to their organizations or operations. Moreover, Plaintiffs' asserted desire to participate in Council proceedings, which itself would take time and money, belies their claim that they do not have adequate resources to monitor Council activities.

Plaintiffs also reference two other types of injury—loss of ability to participate in the Council and inability to obtain information about the Council "in a timely fashion." Pls.' Mem. at 25; *see also* Compl. ¶¶ 49–65; Prior Decl. ¶¶ 6–7; Neily Decl. ¶¶ 10, 12, 13.[2] But Parents Defending Education's claim of injury in this regard is premature, as it may well be eligible for (and ultimately selected for) the Council in enough time to make the first meeting. *See* Meadvin Decl. ¶ 7. And a preliminary injunction would not redress such injury as to the other two plaintiffs, as they do not appear to be eligible for the Council, according to the requirements set forth by the Department. *See supra* p. 5. "It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011). In any event, neither the

---

[2] Unlike the other injuries discussed in the text, an informational injury may confer standing in the FACA context. *See Byrd v. U.S. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) ("[A] refusal to provide information to which one is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing."). The Government takes no position at present on whether Plaintiffs will be able to establish standing based on such an injury but notes that the allegations in the Complaint must eventually be substantiated for standing purposes as well. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

alleged participational injury nor the alleged informational injury are irreparable in the absence of a preliminary injunction.  Should the Court ultimately determine in the normal course of this litigation that the Council is required to comply with FACA, it can order the Department to "start over" and reconstitute the Council lawfully.  *Young*, 2022 WL 474145, at *4.  Plaintiffs would then be afforded access to Council materials consistent with FACA and would also "have a 'fair' chance to be selected as . . . member[s] of a lawfully reconstituted [Council], participate in its meetings, and play [a] role in shaping any recommendation," *id.*, fully remedying these harms.

Finally, Plaintiffs assert that they will incur additional costs through the filing of FOIA requests for Council records.  Zadrozny Decl. ¶ 6; Neily Decl. ¶¶ 5, 14.  Again, the filing of public-records requests is part of Plaintiffs' normal activities.  *See* Neily Decl. ¶¶ 5, 14.  And, although they allege that some requests may be costly, *id.* ¶ 15, Plaintiffs do not allege that any fees will be imposed for the one they have filed here pursuant to the federal Freedom of Information Act ("FOIA"), which provides for a fee waiver in certain circumstances.  Zadrozny Decl. ¶ 6; Neily Decl. ¶ 12; *see* 5 U.S.C. § 552(a)(4)(A)(ii)(II).  Even if costs are imposed, those costs are unlikely to be significant and could potentially be recovered through litigation.  *See* 5 U.S.C. § 552(a)(4)(A)(vii), (E).  "[A]n asserted 'economic harm' must 'be significant, even where it is irretrievable because a defendant has sovereign immunity.' . . . In other words, the loss 'must . . . be serious in terms of its effect on the plaintiff.'"  *CAPPS,* 344 F. Supp. 3d at 170 (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)).  Plaintiffs' assertions that they may incur some costs relative to their FOIA requests are too speculative and insignificant to establish irreparable injury here.

In sum, Plaintiffs have failed to meet their burden of substantiating their claims of irreparable injury based on (1) diversion of resources, (2) loss of ability to participate in the Council, (3) informational injury, or (4) the costs of filing FOIA requests.

### III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST DO NOT SUPPORT THE ISSUANCE OF A PRELIMINARY INJUNCTION.

A party seeking a temporary restraining order or preliminary injunction must also demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  These two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, the balance of equities and the public interest cut against issuing an emergency injunction.  The Department created the Council "to facilitate strong and effective relationships between schools and parents, families, and caregivers to help ensure that students are recovering from the pandemic and will thrive in the future." Meadvin Decl. ¶ 4.  These are important public goals that will be impeded if the Council is not allowed to meet in the near future, at the beginning of the school year.  And while FACA serves the public interest by requiring the dissemination of certain information about how advisory committees conduct their business, *see* Pls.' Mem. at 26, the public interest is not served by hampering the critical operations of "executive consultations on policy issues with *ad hoc* collections of private individuals who are not convened to render advice or recommendations, *as a group.*" *VoteVets Action Fund*, 992 F.3d at 1101 (internal quotation marks omitted) (citation omitted).  Therefore, the public interest favors allowing the Council to commence its work so that the Department can obtain the benefits of the information it expects to gather from the Council, and so that the Department can disseminate information through the Council as soon as feasible.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Application for a Preliminary Injunction, ECF No. 3.


Dated:  July 28, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
CHRISTOPHER D. EDELMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*