## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AMERICA FIRST LEGAL FOUNDATION**, *et al.*,

     *Plaintiffs,*

**v.**

**MIGUEL CARDONA**, *et al.*,

     *Defendants.*

**Case No. 1:22-cv-1947-RCL**

## MEMORANDUM OPINION

This case concerns the decision of the United States Department of Education ("the Department") to create a group known as the National Parents and Families Engagement Council ("the Council") earlier this year. Plaintiffs America First Legal Foundation, Fight for Schools and Families, and Parents Defending Education argue that that decision violated the Federal Advisory Committee Act ("FACA"), which sets out certain substantive and procedural requirements for the creation of advisory committees by the Executive Branch and the way those committees conduct their meetings. Defendants Secretary of Education Miguel Cardona ("the Secretary"), the Department, and the Council argue that FACA does not apply because the Council is not an "advisory committee" within the meaning of that statute.

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 20 and 22, and defendants' motion to strike plaintiffs' statement of undisputed material facts, ECF No. 23. For the following reasons, plaintiffs' motion will be **DENIED**, defendants' motion will be **GRANTED** insofar as plaintiff America First Legal Foundation lacks standing to challenge the Council's ideological balance and **DENIED** in all other respects, and the case will proceed to discovery.

1

## I.   BACKGROUND

### A.  Factual Background

Plaintiffs are three nonprofit groups. Plaintiff America First Legal Foundation "promotes government transparency and accountability by gathering official government information, analyzing it, and disseminating it to the public through reports, press releases, media platforms including social media, and by posting government records on its website for use by the public, scholars, and others." Compl. ¶ 13, ECF No. 1. "Plaintiff Fight for Schools and Families is a non-partisan political action committee focused on electing common-sense candidates that commit to policies that support equal opportunity, tolerance, meritocracy, and achievement." *Id.* ¶ 14. "Plaintiff Parents Defending Education is a nationwide, nonpartisan, grassroots organization, whose members are primarily parents of school-aged children. Its mission is to prevent—through advocacy, disclosure, and, if necessary, litigation—the politicization of K-12 education." *Id.* ¶ 15. Plaintiffs Fight for Schools and Families and Parents Defending Education both profess to have "fundamentally different viewpoint[s] than the Council's current members." *Id.* ¶¶ 50, 60.

The following factual background on the Council's inception is drawn from the Administrative Record ("AR") in the case, which, as explained below, is quite sparse.

In March 2022, the Department sent an email to various nonprofits sharing a "draft outline for the development of a National Parents and Families Engagement Council as an opportunity for the Department to listen, learn and engage families." AR 1. The email also sought to gauge the organizations' interest in joining the Council, as well as the organizations' input on the following matters:

- Timing for the launch
- Membership and structure of the Council
- Mission and purpose of the Council
- The role of national and local Council members
- Issues the Council should consider

*Id.* Several organizations provided the requested feedback. For example, the United Parent Leaders Action Network proposed that the Council should "advise on the full array of policies and programs under [the Department's] jurisdiction and . . . provide specific recommendations regarding proposed legislation, program guidance and implementation, grants and funding opportunities, and budgets." AR 37. Importantly, however, the Administrative Record is devoid of announcement from the Department detailing the way the Council would function or the types of recommendations, if any, it would offer.

In early June 2022, the Department sent a further email to organizations with an attached document setting out standards for participating organizations, obligations of Council members, and guidelines for selecting "parent/family member/caregiver representative[s]" to join the Council. AR 48. That document stated that "[e]ach participating organization should:

- Have a national chapter that sets policy agendas and priorities;
- Oversee local and/or regional chapters that meet regularly with local stakeholders;
- Have a direct relationship to parents, families, caregivers and the school community(s);
- Be focused on helping foster productive conversations between parents, families, caregivers and schools related to recovering from the pandemic;
- Be committed to helping create strategic engagements between parents, families, caregivers and schools that will help students thrive.

*Id.* On June 13, 2022, the Department sent organizations another email, announcing that the Council would "launch" the next day, re-attaching the standards document, communicating signup deadlines, and stating that "the National Parents and Families Engagement Council *is not a Federal Advisory Committee* and therefore, does not have access to information and advice on a broad range of issues affecting federal policies and programs." AR 60–61 (emphasis in original).

On June 14, 2022, the Department issued a press release announcing the launch of the Council. AR 64–65. The press release stated that the Council would "facilitate strong and effective relationships between schools and parents, families and caregivers," and that "[f]amilies' voices play a critical role in how the nation's children are recovering from the pandemic." AR 64. It quoted the Secretary as stating that "[t]he Council will help foster a collaborative environment where we can work together to serve the best interest of students and ensure they have the academic and mental health support they need to recover from the pandemic and thrive in the future." *Id.* The press release also described the Council as "a channel for parents and families to constructively participate in their children's education by helping them understand the rights they have, create a feedback loop with schools to shape how American Rescue Plan (ARP) funds are deployed to meet students' needs, and identify summer learning and enrichment opportunities for children in their communities." *Id.* The press release listed fourteen organizations that would be members of the Council: the Council of Parent Attorneys and Advocates, Fathers Incorporated, Generations United, Girls Inc., the League of United Latin American Citizens, Mocha Moms, the National Association for Family, School, and Community Engagement, the National Action Network, the National Military Family Association, the National Parent Teacher Association, the National Parents Union, the National Center for Parent Leadership, Advocacy, and Community Empowerment, the United Parent Leaders Action Network, and UnidosUS. *Id.* In the weeks following the press release, the Department added two more organizations to the Council: the National Association for the Advancement of Colored People and Jack and Jill of America. AR 83, 86. The Council's creation was never announced in the Federal Register.

The above factual background is virtually all that the Administrative Record provides. A few representations that defendants have made outside of the Administrative Record, however,

bear mentioning. The first of those representations came in a July 28, 2022 declaration by Hayley Meadvin, a Senior Advisor at the Department who "was directly involved in the creation of the National Parents and Families Engagement Council." Decl. of Hayley Meadvin ("Meadvin Decl.") ¶¶ 1–2, Ex. A to Defs.' Opp'n Pl.'s Mot. for P.I., ECF No. 9-1. According to Meadvin, as of July 28, "[t]he department has not convened any meetings of the Council, and there is currently no set schedule of planned meetings." *Id.* ¶ 11.[1] Furthermore, Meadvin states that "[t]he Department has not authorized the Council to make recommendations of any form and does not intend to solicit consensus advice or recommendations from the Council," and that "the Department has not created or approved, nor does it intend to create or approve, any process through which the members of the Council should arrive at or vote on consensus advice or recommendations." *Id.* ¶ 13. Finally, defendants represented at an August 10, 2022 hearing on plaintiffs' motion for a preliminary injunction that "the first meeting of the [C]ouncil will not take place until at least mid to late September." Tr. of Aug. 10, 2022 Hg. ("P.I. Hg. Tr.") at 29:9–10, Ex. A to Defs.' Cross-Mot. for S.J., ECF No. 22-2. Defendants have given no indication that they intend to open the Council's meetings to the public. As of the time of this Memorandum Opinion, the Court has not received any further updates on plans for the Council's first meeting.

## B. Procedural History

Plaintiffs filed the present lawsuit on July 6, 2022, shortly after the Council's announcement. The complaint asserted a claim against the Secretary and the Department under the Administrative Procedure Act ("APA") (Count I), claims against the Council under the Mandamus Act (Counts II–VII), and a claim seeking a declaratory judgment against all defendants under the

---

[1] Defendants also "deny that the Council has met" as of September 16, 2022, when they filed their Answer. Answer ¶ 6, ECF No. 33.

Declaratory Judgment Act (Count VIII), all for violations of FACA. *See* Compl. ¶¶ 66–131. Specifically, plaintiffs allege that the Council violates FACA's informational, open-records, and procedural requirements for meetings, and that it is comprised exclusively of organizations who generally support the Biden Administration's policies, in violation of FACA's requirement that advisory committees be "fairly balanced," 5 U.S.C. App. 2 § 5(b)(2).

Less than a week later, on July 14, 2022, plaintiffs moved for a preliminary injunction barring the Council from meeting. The Court denied that motion from the bench at an August 10, 2022 hearing, concluding that plaintiffs had neither shown that they were likely to succeed on the merits nor that they would suffer irreparable harm absent preliminary relief. P.I. Hg. Tr., 31:11–32:16.

At the same hearing, the Court ordered the parties to submit an expedited summary judgment briefing schedule in hopes that it could resolve the case before the Council's first meeting. The parties did so. Plaintiffs filed their motion for summary judgment, ECF No. 20, on August 19, 2022, and defendants filed their cross-motion for summary judgment, ECF No. 22, on August 26, 2022. Defendants also filed a motion to strike plaintiffs' statement of undisputed material facts, ECF No. 23. With all of the briefing completed and filed, all three motions are now ripe for the Court's review.

## II.    LEGAL STANDARDS

### A. Article III Standing

Article III of the United States Constitution limits the "judicial Power" of the federal courts to certain "Cases" and "Controversies." U.S. Const. art. III, § 2. Because of that limitation, plaintiffs in civil actions must have standing—a constitutionally sufficient stake in the matter—to sue. In order to show that they have such standing, plaintiffs must establish that they (1) suffered

a concrete and particularized injury-in-fact that is (2) traceable to defendants' conduct at issue and (3) redressable by the relief sought. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

### B.  FACA, Rights of Action, and Summary Judgment

"FACA does not create a private right of action." *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32 (D.D.C. 2011). Accordingly, plaintiffs alleging FACA violations must bring their claims under another right of action. Most commonly, plaintiffs will assert a cause of action under the APA, which, in relevant part, empowers courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

Plaintiffs here also seek relief under the Mandamus Act and the Declaratory Judgment Act. The Mandamus Act "grants district courts original jurisdiction over 'any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting 28 U.S.C. § 1361). "Mandamus is [often] the only vehicle for" FACA claims against an advisory committee itself, "because an advisory committee is not an agency subject to the APA and FACA provides no private right of action." *NAACP Legal Def. and Educ. Fund v. Barr* ("*LDF*"), 496 F. Supp. 3d 116, 145 (D.D.C. 2020). As for plaintiffs' request for a declaratory judgment, "[i]n general, a count for [relief under the Declaratory Judgment Act] 'is not cognizable as a separate cause of action, but it is more properly included in the[] prayer for relief.'" *Walpin v. Corp. for Nat. and Community Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010) (alteration in original) (quoting *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 45 (D.D.C. 1996)).

In an ordinary civil case, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion in such a case must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"But when . . . the court is reviewing a final agency action under the APA, the standard set forth in Rule 56(a) does not apply . . . . Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (citing *Roberts v. United States*, 883 F. Supp. 2d 56, 62–63 (D.D.C. 2012) and quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)). "Judicial review of agency action" under the APA "is generally limited to the administrative record." *Chiayu Chang v. U.S. Cit. & Imm. Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (citing 5 U.S.C. § 706 and *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)). "Discovery or supplementation of the administrative record is therefore not permitted 'unless [a party] can demonstrate unusual circumstances justifying a departure from this general rule.'" *Id.* (alteration in original) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C.

Cir. 2010)). One such circumstance is "where the administrative record itself is so deficient as to preclude effective review." *Hill*, 709 F.3d at 47.

### C. FACA's Regulation of Advisory Committees

"FACA was born of a desire to assess the need for the 'numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government.'" *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 445–46 (1989) (quoting 5 U.S.C. App. 2 § 2(a)). "Its purpose was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Id.* (citing 5 U.S.C. App. 2 § 2(b)).

FACA defines an "advisory committee," with certain exceptions not at issue here, as:

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is . . . established by statute or reorganization plan, . . . established or utilized by the President, or [] established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government.

5 U.S.C. App. 2 § 3(2). The Circuit has set out four requirements that determine whether a group is an advisory committee within FACA's ambit. The group must have, "in large measure, an organized structure, a fixed membership, and a specific purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"), 997 F.2d 898, 914 (D.C. Cir. 1993). Finally, according to the Circuit, "the group must also 'render advice or recommendations, *as a group*, and not as a collection of individuals.'" *VoteVets Action Fund v. U.S. Dep't of Veterans Affairs*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (emphasis in original) (quoting *AAPS*, 997 F.2d at 913).

If a group qualifies as an advisory committee under FACA, it must meet certain procedural and substantive requirements. As relevant to plaintiffs' claims in the present case, a FACA advisory committee created by a federal agency must be announced in the Federal Register, 5 U.S.C. App. 2 § 9(a)(2); be "fairly balanced in terms of the points of view represented and the functions to be performed," *id.* § 5(b)(2); have its "meeting[s] . . . open to the public," announced in the Federal Register, and conducted in the presence of a designated federal officer, *id.* § 10(a)(1)–(2), (e); and keep public records of those meetings, *id.* §§ 10(b)–(d), 11.

### III.    DISCUSSION

Defendants do not dispute that, if the Council is an advisory committee, it was not established in accordance with FACA. Thus, the main question in this case is whether the Council meets FACA's definition of an advisory committee. After considering the parties' summary judgment briefing and the Administrative Record, the Court concludes that neither party is entitled to summary judgment on the merits because the present record is insufficient to determine whether the Council is an advisory committee within the meaning of the statute. The Court also determines that one of the three plaintiffs lacks standing to challenge one aspect of the Council's alleged noncompliance with FACA. After discussing standing and the merits of plaintiffs' claims under the APA and the Mandamus Act on the present record,[2] the Court will explain why extra-record discovery is necessary and defendants' motion to strike is without merit.

---

[2] Although the complaint purports to bring a claim under the Declaratory Judgment Act, this Memorandum Opinion omits discussion of that statute, since it only provides a remedy, not a separate right of action, and the Court declines to grant summary judgment as to liability under either the APA or the Mandamus Act.

### A.  Standing

First, defendants argue that plaintiffs lack standing to bring this suit. That argument is, for the most part, without merit. With one minor exception, plaintiffs easily satisfy Article III's standing requirements with respect to all their claims under well-established precedent.

Both parties devote significant space in their briefs to arguing over whether plaintiffs' diversion of resources away from other projects—an injury plaintiffs earlier argued was irreparable absent a preliminary injunction—is a sufficiently concrete and particular injury-in-fact to confer standing. As the Court noted in denying the preliminary injunction motion, "[a] mere diversion of resources away from other projects ordinarily is not even an injury in fact[,] much less an irreparable one." P.I. Hg. Tr. at 32:5–8 (citing *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015)). But at this stage, when plaintiffs no longer need to show that their injuries are irreparable without a preliminary injunction, the diversion-of-resources argument is a distraction from more straightforward reasons why plaintiffs, for the most part, have standing to challenge the Council's alleged noncompliance with FACA.

First, plaintiffs seek information about the Council and what is occurring at Council meetings, which would be public record if the Council followed FACA's publication and open-records requirements. It is well established that in the FACA context, an informational injury— even without an accompanying diversion of resources—is sufficient to confer Article III standing. *See Pub. Citizen*, 491 U.S. at 449 ("[R]efusal to permit appellants to scrutinize [a] [c]ommittee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue."); *Judicial Watch, Inc. v. U.S. Dep't of Com.*, 583 F.3d 871, 873 (D.C. Cir. 2009).

Here, plaintiffs allege just such a cognizable informational injury. They seek information and access to meetings to which they argue FACA entitles them and which they are presently being

denied. That injury is traceable to defendants' decision not to have the Council comply with FACA's public-access and records requirements, and it is redressable by an order that the Council refrain from meeting until it has satisfied those requirements.

Second, plaintiffs allege that the Council is not representative of their viewpoints, in violation of FACA's "fairly balanced" requirement. As the Circuit has made clear, "the 'fairly balanced' requirement was designed to ensure that persons or groups directly affected by the work of a particular advisory committee would have some representation on the committee," and thus, when that "requirement is ignored, persons having a direct interest in the committee's purpose suffer injury-in-fact sufficient to confer standing to sue." *Nat'l Anti-Hunger Coalition v. Exec. Committee of President's Priv. Sector Survey on Cost Control,* 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983); *see also LDF*, 496 F. Supp. 3d at 129–30.

Here, plaintiffs Fight for Schools and Families and Parents Defending Education are education-focused organizations who have largely opposed the Biden Administration's educational policies, including the Department's response to the pandemic. They argue that the Council is not fairly balanced because it is composed entirely of organizations broadly aligned with those policies. Moreover, they allege that they would apply for membership on the Council given the opportunity but have been unable to do so. Compl. ¶¶ 49, 59. That is a sufficient representational injury to confer standing, and it is traceable to defendants' alleged decision to offer membership only to a hand-picked group of likeminded organizations and redressable by an order that the Council refrain from meeting until the Department has ensured that the Council's membership is fairly balanced. However, besides its general interest in government transparency, plaintiff America First Legal Foundation has not shown that it has "a direct interest in the committee's purpose," *Nat'l Anti-Hunger Coalition*, 711 F.2d at 1074 n.2, which is focused on

education policy. Strictly speaking, then, plaintiff America First Legal Foundation, unlike the two other plaintiffs, does not have standing to challenge the Council's ideological balance.

Plaintiffs have demonstrated that they have Article III standing to challenge the Council's alleged noncompliance with FACA, except insofar as plaintiff America First Legal Foundation challenges the Council's ideological balance. Accordingly, defendants are entitled to summary judgment on that point only in part.

## B. The APA Claim

The Court will now turn to the merits of the parties' motions for summary judgment, beginning with plaintiffs' claim that defendants violated the APA by establishing an illegal advisory committee that does not comply with FACA. Since APA cases are ordinarily decided on the basis of the Administrative Record, the Court will first determine whether the Council qualifies as an advisory committee on the basis of that record.[3]

As noted above, in order to qualify as a FACA advisory committee, an agency-created group must have an organized structure, a fixed membership, and a specific purpose, and it must also provide advice as a group and not a collection of individuals. *See AAPS*, 997 F.2d at 913–14; *VoteVets*, 992 F.3d at 1104. Plaintiffs argue that the Council meets all four requirements, while defendants argue that it meets none of them.

As an initial matter, the parties disagree as to how the four requirements set out in *AAPS* and expounded upon in *VoteVets* fit together. According to plaintiffs, whether the alleged committee was established to provide advice as a group is the overarching inquiry, and a court conducts that inquiry in reference to the other three factors. *See* Pls.' Mem. in Support of Mot. for

---

[3] Plaintiffs also bring claims under the Mandamus Act whose merits turn in large part on the same FACA issues. The Court will address those claims in the next section of this Memorandum Opinion.

S.J. ("Pls.' Mem.") at 18, ECF No. 20-1. According to defendants, the group-advice requirement is on par with the other requirements, and all four must be met. *See* Defs.' Mem. in Support of Cross-Mot. for S.J. ("Defs.' Mem."), ECF No. 22-1, at 15.

While the Circuit's guidance in *AAPS* is admittedly not clear on this point, its most recent pronouncement on the nature of FACA advisory committees in *VoteVets* convinces this Court that defendants have the correct reading of the applicable standard. In *VoteVets*, the Circuit started with the first three requirements, and then stated that "the group must *also* 'render advice recommendations, *as a group*, and not as a collection of individuals.'" 992 F.3d at 1104 (first emphasis added; second emphasis in original) (quoting *AAPS*, 997 F.2d at 913). And it first explained how the committee at issue in that case "worked intensively as a group," before analyzing the other three requirements in a separate paragraph explaining how that committee "*also* had the 'formality and structure'" necessary to qualify as a FACA advisory committee. *Id.* at 1104–05 (emphasis in original) (quoting *AAPS*, 997 F.2d at 914). Accordingly, this Court reads *VoteVets* as requiring plaintiffs in FACA cases to show that the putative advisory committee has (1) an organized structure, (2) a fixed membership, and (3) a fixed purpose, and that (4) it offers advice as a group rather than a collection of individuals.

With that standard in mind, the Court agrees with plaintiffs in part: The Council easily satisfies the structure, membership, and purpose requirements. However, the present Administrative Record does not provide the Court the information it would need to determine whether the Council was established in observance of the group-advice requirement, precluding summary judgment for either party on the APA claim at this time.

14

### 1.  The Council has an organized structure.

The "organized structure" requirement is not a high bar to clear. For instance, in *VoteVets*, the Circuit held that the plaintiffs in that case adequately alleged that a group formed to "straighten out the VA" was a FACA advisory committee even though it was comprised of only three individuals, all three of whom apparently were not present at every meeting, and who would "fill in the others" on missed meetings rather than resorting to some kind of formal minute-taking. 992 F.3d at 1104–05 (internal quotation marks omitted). Still, a FACA advisory committee must be sufficiently organized to allow it to function cohesively as a group. Thus, in *AAPS*, the Circuit remanded the case, in part to determine whether a collection of working groups comprised of "340 virtually anonymous persons" qualified as an advisory committee, or more likely "a number of advisory committees," or merely an unorganized "horde." 997 F.2d at 914.

Here, it is clear that the Council has an organized structure. The Council is comprised of sixteen nonprofit organizations, AR 64, 83, 86, each of which may nominate one to three parents or caregivers of students as representatives, AR 48. The Department has issued both criteria for membership on the Council and guidelines for selecting representatives. *Id.* Organizations on the Council are expected to participate at the national level and also hold events at the local level. *Id.* That is an "organized structure" by any sensible definition.

Defendants argue that the Council cannot have an organized structure because "[t]he Department has not created or approved any formal organizational or leadership structure within the Council," Defs.' Mem.. at 16–17 (quoting Meadvin Decl. ¶ 14)—in other words, because the Council does not have a *hierarchical* structure, it is not organized. The designation of a leader may be a sign that a group has an organized structure, but it does not follow from a group's lack of a

designated leader that that group is unorganized.[4] Taking defendants' position to its logical conclusion, an agency could select members of a fixed group according to a strict set of criteria and provide a detailed set of instructions for that group's meetings, and the group could even give the agency formal advice as a group, yet that group would not qualify as a FACA advisory committee as long as it did not have a leader. Congress cannot have intended to make FACA so easy to evade. *Cf. Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975) (suggesting that a group might violate FACA if "the lack of formal organization arises out of a purpose to evade the statute").

The Court therefore concludes that the Council has a sufficiently organized structure to qualify as a FACA advisory committee.

### 2. The Council has a fixed membership.

A group has a "fixed membership" for FACA purposes if it has a designated list of members rather than a rotating cast of characters who come and go from meeting to meeting. The case of *Nader v. Baroody*, though decided before the seminal Circuit decisions expounding on the definition of "advisory committee," illustrates the point. In *Nader*, the plaintiff argued that a series of bi-weekly meetings that the president held with different private-sector organizations created an "advisory committee" within the meaning of FACA. 396 F. Supp. at 1231–32. The court rejected that argument, in part because there was "little or no continuity" in the alleged committee's membership from meeting to meeting. *Id.* at 1234. In contrast, where there is significant continuity in membership, courts have not avoided calling groups advisory committees simply because that

---

[4] Defendants assert that "courts, including the D.C. Circuit, have found the lack of internal group leadership to indicate that group is *not* a FACA advisory committee and therefore need *not* follow requirements like appointing a designated federal officer," Defs.' Mem. at 17, but the lone case they cite for that proposition, *VoteVets*, does not support it. The Circuit noted in the background section of that opinion that "President Trump named [Isaac] Perlmutter," a member of the council at issue, to lead it, *VoteVets*, 992 F.3d at 1102, but that fact did not come up at all in the Circuit's analysis of whether the council had an organized structure, *see id.* at 1104–05.

membership changes somewhat. In *Pub. Empls. for Envt'l Responsibility v. Nat'l Parks Serv.*, No. 19-cv-3629-RC, 2022 WL 1657013 (D.D.C. May 24, 2022), for example, the court held that a group that "expanded over time but consistently represented a core group of entities from both agencies and private interests" had a sufficiently "fixed membership" to qualify as an advisory committee. *Id.* at *16.

In other words, an *ad hoc* collection of individuals who vary from meeting to meeting cannot be an advisory committee, but a group with significant continuity in membership can, even if its exact list or number of members is not set in stone. To draw an analogy, the cast of a television show still functions as a fixed group even if it periodically features guest appearances or the writers occasionally kill off a character or introduce a new one in a season premiere.

With these principles in mind, it is clear that the Council has a "fixed membership" for FACA purposes. Defendants argue that the Council does not have a "fixed membership" because its membership has already expanded and may do so again in the future, and because its membership may change for the next school year, but that cannot be. The Council has a set list of members that, although it may expand somewhat, appears set to "consistently represent[] a core group of entities" for at least an entire school year. *Cf. Pub. Empls.*, 2022 WL 1657013, at *16. Surely FACA does not allow agencies to evade its requirements by consistently convening the same group of individuals to give advice but reserving the right to reconvene the group with a different list of members in the future.

The Court therefore concludes that the Council has a sufficiently "fixed membership" to qualify as a FACA advisory committee.

### 3.   The Council has a specific purpose.

The "specific purpose" requirement, like the "organized structure" requirement, is not a high bar to clear.   There is no requirement that plaintiffs identify a discrete regulation or administrative determination on which the putative committee intends to offer advice—otherwise, the "specific purpose" requirement would be difficult to square with the statute's text, which speaks broadly of "obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. App. 2 § 3(2). For example, in *VoteVets*, the Circuit concluded that "advising the Department of Veteran Affairs on 'the essential decisions' relating to veterans' affairs" was a sufficiently specific purpose for the group to qualify as a FACA advisory committee. 992 F.3d at 1105.

Here, the Council clearly has a specific purpose. The press release announcing the Council's launch states that its purpose is "to facilitate strong and effective relationships between schools and parents, families and caregivers," emphasizing that "[f]amilies' voices play a critical role in how the nation's children are recovering from the pandemic," and quoting the Secretary as stating that "[t]he Council will help foster a collaborative environment where we can work together to serve the best interest of students and ensure they have the academic and mental health support they need to recover from the pandemic and thrive in the future." AR 64. In view of that press release and the email correspondence between the Department and member organizations in the Administrative Record, it is beyond reasonable dispute that the Council's purpose is to gather information or advice from parents, caregivers, and the member organizations that will inform the Department's approach to educational policy, with a particular focus on recovering from the pandemic. Defendants argue that the Council "has no single purpose but rather a generalized set of objectives," Defs.' Mem. at 33. But advising the Department of Education on educational

policy, with an emphasis on a particular subset of such policy, is at least as specific a purpose as "advising the Department of Veteran Affairs on 'the essential decisions' relating to veterans' affairs," which the Circuit considered a sufficiently specific purpose in *VoteVets*, 992 F.3d at 1105. Moreover, defendants do not cite a single case in which a court held that a group was not a FACA advisory committee because its purpose was so nonspecific as to constitute a "generalized set of objectives." Defs.' Mem. at 33.

The Court therefore concludes that the Council has a sufficiently specific purpose to qualify as a FACA advisory committee.

### 4. It is unclear from the record whether the Council will give advice as a group.

The last requirement that the Circuit has set out is the most difficult. Plaintiffs argue that the Department clearly intended the Council to offer advice as a group rather than a collection of individuals. Defendants argue that the Council does not satisfy that requirement for two reasons: first, the Council will only gather information rather than offering advice, and second, it will do none of that as a group. *See* Defs.' Mem. at 20–28. The Court agrees with plaintiffs that the Council will offer "advice," but cannot draw any conclusions from the Administrative Record, as it currently stands, as to whether the Council will do so as a group.

It is clear that the Council will offer "advice" in some form. Information, like specific recommendations, can constitute advice for FACA purposes. *See Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 34 (D.D.C. 2006) ("Advisory panels that support decision makers with data, and not policy advice or recommendations, can be considered advisory committees under the FACA."); *see also Cal. Forestry Ass'n v. U.S. Forest Serv.*, 102 F.3d 609, 611–13 (D.C. Cir. 1996) (holding that group established to research and draft environmental study was established to offer "advice" within the meaning of FACA). Even if the Council will only serve as a means of

transmitting information from local schools and communities to the Department, it can still be a FACA advisory committee if it does so as a group.

The second question—group versus individual advice—is closer. Plaintiffs argue that various statements in the record make it clear that the Council is intended to function as a group, offering collective advice. *See* AR 60 ("We appreciate the support you have provided the Department in getting to this point and are looking forward to the partnership that the Department will form with all of you."); AR 64 ("The Council will help foster a collaborative environment where we can work together . . . ."). But those statements are at least as susceptible to the interpretation that the Department seeks to form a "partnership" and "collaborative environment" between *itself* and each of the participating organizations rather than one in which all the organizations work together. To draw an analogy, suppose a congressional committee called on five different experts to advise it on a legislative initiative, that it consulted separately with each of those experts, and that it regularly called on all five experts to testify separately at the same hearings. Those experts might be working in "partnership" with the congressional committee, yet if they did not significantly interact with *each other*, they would be giving advice as a collection of individuals, not as a group.[5]

This reading of the record is consistent with binding Circuit precedent on determining whether a group is subject to FACA. In *VoteVets*, the Circuit devoted significant analysis to the ways in which the alleged FACA committee functioned as a group:

> After President Trump's inauguration, the Council met regularly and its members repeatedly described themselves as a "group" or "team" working together . . . . According

---

[5] Plaintiffs draw a different analogy, arguing that what defendants propose here is comparable to the early Supreme Court, which issued *seriatim* opinions, but one would still consider it to have functioned as a group. *See* Pls.' Reply to Defs.' Opp'n S.J. ("Pls.' Reply") at 32, ECF No. 26. That analogy is not entirely apposite, because the work of the early Supreme Court still required the Justices to interact with each other—not least by voting on the disposition of cases. Here, in contrast, if defendants truly do not intend the Council to involve any meaningful interaction between its members, it might not function as a group.

> to VoteVets, Perlmutter, Sherman, and Moskowitz worked intensively as a group, including through in-person meetings, emails, and phone calls . . . . During meetings, conference calls, planning periods, and in spoken and written communication, the trio operated and referred to themselves as a unit. Members of the Department, too, considered them a "team." . . . The Council members consulted one another in advising the Department, jointly offering their recommendations . . . . Although, as the Department points out, the complaint acknowledges that the three members were not all invariably present at every Council meeting, . . . the members present often took care to specify that they would fill in the others.

*VoteVets*, 992 F.3d at 1104–05 (citations omitted).

In this case, there simply is not enough evidence in the Administrative Record for the Court to conduct a similar analysis of whether the Council functions as a group. None of the documents in the record indicate what is supposed to happen at Council meetings, and defendants represent that there is still no plan for what is supposed to happen. Plaintiffs argue that is irrelevant—that "what matters under FACA's text (and the APA) is 'the committee's creation' rather than 'how the Committee was used.'" Pls.' Mem. at 31 (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1017 n.1 (D.C. Cir. 1998)). But as explained above, it is not so clear from the record that it was *ever* the Department's intent to have the Council render group advice. And this is not a case in which an agency established a committee, finalized plans for its operations, and then changed those plans after the committee had already begun to meet. In a case such as this, where the alleged advisory committee has *never met* and the agency that created it has never given any details as to how it is supposed to function, it makes more sense to assess those details when they are finalized than to guess at the subjective intentions of agency officials at the time they took their first steps toward establishing the group.

Defendants argue that the Meadvin Declaration, which states that "[t]he Department will only solicit the individual input of each Council member" on the topics covered at the meetings, Meadvin Decl. ¶ 10, already establishes that the Council will not render advice as a group. They contend that Meadvin's representation is "merely explanatory of the original record," and thus

should be considered a supplement to the Administrative Record rather than evidence wholly outside of it, Defs.' Reply to Opp'n to Cross-Mot. S.J. ("Defs.' Reply") at 16, ECF No. 31 (quoting *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 215 (D.D.C. 2012)). But it is hard to see what evidence in the Administrative Record the Meadvin Declaration "merely explains." As just noted, that record contains no information whatsoever about the extent to which Council members will interact with each other. Moreover, the rule that an agency may rely on "merely explanatory" supplements to an administrative record does not apply where the agency originally "provided no rationalization" to justify its decision and seeks to "initially offer[] one on judicial review." *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*, 810 F.2d 1233, 1236 (D.C. Cir. 1987). Here, the Administrative record contains "no rationalization" for the conclusion that the Council is merely a collection of individuals and thus not subject to FACA, and therefore, if the Court is to confine its review to the Administrative Record as defendants insist it should, they are "precluded" from relying on Meadvin's entirely new representations. *Id.*[6]

Since the Administrative Record does not indicate whether the Council is supposed to offer advice as a group or as a collection of individuals, neither party is entitled to summary judgment on the APA claim as that record now stands.

## C. The Mandamus Claims

The Court next considers plaintiffs' claims under the Mandamus Act. Mandamus relief is appropriate only where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp.*, 603 F.3d at 62 (internal quotation marks and citation omitted). Here, plaintiffs' argument as to

---

[6] That is not to say that the Court will not consider the Meadvin Declaration—as explained below, the Court will order discovery outside the Administrative Record.

why there is no other adequate remedy available is that "no other relief is available against the Council . . . . since it is not an agency" and thus, unlike the other defendants, is not subject to the APA. Pls.' Reply at 33. That may well be—courts have recognized mandamus as an appropriate vehicle for FACA suits against committees themselves for that very reason. *See LDF*, 496 F. Supp. 3d at 145. Of course, the underlying merits question of whether there has been a FACA violation remains the same, and to show that mandamus is warranted, plaintiffs must establish a *clear* right to relief and that defendants have a *clear* duty to act. As explained above with respect to the APA claim, it is not at all clear from the present record whether there has been a FACA violation, and thus whether plaintiffs are entitled to relief and defendants have a duty to act.

Since the mandamus claims do not involve the APA's judicial review provision, as explained in more detail in the next section, the Court sees no reason why its analysis of those claims should be confined to the Administrative Record. But since the case has never proceeded to discovery, there is no additional evidence in the present summary judgment record that would entitle plaintiffs to summary judgment. And to the extent that the Meadvin Declaration helps defendants establish that the Committee will not offer advice as a group, it would be unfair to rely on that declaration to grant summary judgment to defendants on the mandamus claims since plaintiffs have not had a chance to take discovery. In sum, neither party is entitled to summary judgment on the mandamus claims given the present record.

## D.  Extra-Record Discovery and the Motion to Strike

Finally, having determined that the present record does permit summary judgment for either party, the Court considers two related issues: the propriety of taking discovery outside the Administrative Record and whether to grant defendants' motion to strike plaintiffs' statement of undisputed material facts.

As explained above, "[j]udicial review of agency action" under the APA "is generally limited to the administrative record." *Chiayu Chang*, 254 F. Supp. 3d at 161. Since this case involves not only an APA claim but also claims against a non-agency group under the Mandamus Act, that rule does not completely bar discovery outside the Administrative Record in this case. Courts routinely allow FACA cases involving non-APA claims to proceed to discovery. *See, e.g.*, *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 56 (D.D.C. 2002) (ordering discovery in FACA case involving claims under APA and Mandamus Act); *AAPS*, 997 F.2d at 916 (in case in which plaintiffs did not specifically invoke APA, remanding for "expedited discovery" regarding working group's structure and functions).

Moreover, while the Court has not been able to locate any case expressly discussing the propriety of extra-record discovery in FACA cases brought only under the APA, it appears that such cases often proceed to discovery. Indeed, in *VoteVets*, the operative complaint asserted a cause of action only under the APA, yet the Circuit remanded for discovery. *See VoteVets*, 992 F.3d at 1106–07; Am. Compl. ¶¶ 80–86, ECF No. 10, *VoteVets Action Fund v. U.S. Dept. of Vet. Affairs*, No. 18-cv-1925-TJK (listing sole claim for relief as "Violation of the FACA and the APA"); *see also Cummock v. Gore*, 180 F.3d 282, 293 (D.C. Cir. 1999) (in FACA-APA case, instructing district court on remand to "engage in the necessary discovery and fact finding to determine whether any additional materials fall within the parameters of information to which [plaintiff] is entitled"). To be sure, that may be because agencies have rarely raised the issue.[7] But since this case also involves claims against a non-agency entity under the Mandamus Act, it would be imprudent here to set out for the first time a blanket rule against extra-record discovery in FACA

---

[7] It appears that an agency has argued in at least one other FACA-APA case that review should be limited to the Administrative Record, but the court declined to address that issue. *See NAACP Legal Def. & Educ. Fund, Inc. v. Wilkinson*, No. 20-cv-1132-JDB, 2021 WL 723993, at *7 n.3 (D.D.C. Feb. 24, 2021).

cases involving APA claims. And even if this were a case in which the general APA record rule applied, it would also be a case in which "the administrative record itself is so deficient as to preclude effective review," *Hill*, 709 F.3d at 47, since the Administrative Record does not establish whether the Council will function as a group or a collection of individuals, an essential element of determining whether it is a FACA advisory committee. Thus, some limited discovery to supplement the Administrative Record would be permissible. *Id.*.

Because the Court finds it appropriate to consider evidence outside the Administrative Record in this case, and because such evidence will be necessary to determine whether the Council is a FACA advisory committee, the Court will order the parties to meet and confer pursuant to Federal Rule of Civil Procedure 26(f) and propose a joint plan for limited discovery on the narrow issue of whether the Council will function as a group or a collection of individuals.[8] When that discovery has concluded, the parties may file renewed motions for summary judgment.

For similar reasons, the Court will deny defendants' motion to strike plaintiffs' statement of undisputed material fact. While it is true that Local Rule 7(h)(2) exempts from the requirement of such statements and responses thereto "cases in which judicial review is based solely on the administrative record," LCvR 7(h)(2), this is not a case in which review of *all* claims is based solely on the Administrative Record. However, in light of the motion to strike and defendants' strenuous opposition to plaintiffs' characterization of the facts in reference to the Administrative Record in defendants' memorandum in support of their cross-motion for summary judgment, the

---

[8] Defendants fault plaintiffs for failing to "show[] by affidavit or declaration that" discovery is necessary to obtain "facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see* Defs.' Reply at 17–18. But the facts identified above—the vague pronouncements about the nature of the Council and how its members will "work together," AR 64—justify plaintiffs' opposition to defendants' motion for summary judgment, because they demonstrate a genuine dispute as to whether the Council will function as a group or a collection of individuals. The reason plaintiffs ask for discovery in the alternative is not to oppose defendants' motion; it is to support their own future, renewed motion for summary judgment. Accordingly, no Rule 56(d) affidavit is necessary to proceed to discovery.

Court will not construe defendants' failure to file a response to plaintiffs' statement of undisputed

material fact as admitting the assertions made in that statement, as it ordinarily would under Local

Rule 7(h)(1).

## IV.   CONCLUSION

For the reasons stated above:

1. Plaintiffs' Motion for Summary Judgment, ECF No. 20, will be **DENIED**.

2. Defendants' Cross-Motion for Summary Judgment, ECF No. 22, will be **GRANTED** insofar as plaintiff America First Legal Foundation lacks standing to challenge the Council's ideological balance and **DENIED** in all other respects.

3. Defendants' Motion to Strike Plaintiffs' Statement of Undisputed Material Facts, ECF No. 23, will be **DENIED**.

4. The Court will order the parties to meet and confer pursuant to Federal Rule of Civil Procedure 26(f) and propose a joint plan for discovery on the issue of whether the Council will function as a group or a collection of individuals, with an opportunity for the parties to file renewed motions for summary judgment at the conclusion of that discovery.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: September 22, 2022                                  _/s/ Royce C. Lamberth_____
                                                         Royce C. Lamberth
                                                         United States District Judge